ALICE C. SCHIDE, Appellant, v. WILLIAM S. GOTTSCHICK and P. C. REMLER.—43 S. W. (2d) 777.

Division One, November 20, 1931.

*T. W. Martin, Sylvan Bruner* and *Mosman, Rogers & Buzard* for appellant.

*H. W. Timmonds* for respondents.

FERGUSON, C.—The plaintiff alleges that on June 9, 1925, while a guest at the Booth Hotel in Independence, Kansas, owned and operated by defendants, she was injured as she was attempting to enter the hotel elevator, and that her injuries were caused by the negligent and careless acts of the operator thereof. She asks damages in the sum of $30,000. Upon a trial in the Circuit Court of Barton County, the verdict of the jury was for defendants, and from the judgment entered thereon the plaintiff appealed.

The petition alleges that at the time of the alleged injuries defendants' elevator was in charge of, and being operated by, their agent and servant, and charges that defendants were negligent in the following particulars: permitting the elevator to be in charge of "an inexperienced, unskillful and incompetent operator;" failing "to instruct their said operator as to the proper and safe mode of taking on passengers;" permitting "said elevator to start before the door was closed and to start while plaintiff was in the act of entering said elevator and before she had reasonable time to get into said elevator;" and permitting "said elevator to start before plaintiff, entering said elevator, had reached a place of safety." Defendants' answer admits

that they were partners engaged in conducting the hotel, and after a general denial states: ''The defendants further answering herein, allege and state that if the plaintiff was injured at the time and place and in the manner mentioned in her petition such injuries were not caused by any act of negligence or want of care on the part of the defendants, but were caused by the carelessness and negligence of the plaintiff, which negligence and carelessness directly contributed to plaintiff's injuries, if any, sustained, and without which, said injuries would not have occurred.''

The evidence upon behalf of plaintiff is that she was a married woman, sixty years of age, residing with her husband at Pittsburg, Kansas. She was attending a state convention of the American Legion Auxiliary at Independence, Kansas, as a delegate. Plaintiff registered as a guest at defendants' hotel on June 7 and was assigned to a room on the second floor. She attended the convention on the 7th and 8th of June and during the morning of the 9th. About noon of that day she left her room on the second floor intending to descend to the first floor. She gave the signal for the elevator. Plaintiff had no control over or anything to do with the operation of the electric elevator, its management and operation being entirely under the control of the defendants and their employees. Immediately after plaintiff had given signal, the elevator ascended. It was being operated by a colored boy whom plaintiff had not before observed in charge. The elevator was carrying three passengers, women convention delegates and friends of plaintiff, who had rooms on the third floor. It was stopped on a level with the second floor and the operator opened the door. As the elevator stopped at the second floor plaintiff stated that she was ''going down,'' whereupon the operator closed the door and started the elevator upward. As it began to ascend one of the passengers called to the plaintiff, ''come up with us,'' and plaintiff replied, ''I believe I will.'' The operator then brought the elevator back to the second floor, stopped it on a level with that floor and opened the door for plaintiff to enter. As she attempted to step into the elevator, her right foot being on the elevator floor and her left foot yet on the hall floor, the elevator suddenly and without any warning ''shot up.'' Her right foot was carried upward, the heel of her shoe, being in some manner caught in the floor covering of the elevator, was torn off, and plaintiff fell backward upon and across the edge of the elevator shaft and the metal plate, eight or ten inches wide, on the floor at the elevator door, with her limbs protruding into the elevator shaft. The operator stopped the ascent of the elevator at about the third floor and started it downward. Plaintiff was able to extricate herself from the shaft in time to avoid being crushed by the descending elevator, which continued below the second floor, then upward above the floor and back to a level and stopped. Plain-

tiff was assisted to her room by her friends, the passengers in the elevator who had witnessed the accident. Two of these women testified in the trial of the case, as witnesses for the plaintiff, to substantially the same state of facts as related by plaintiff, a condensed version of which we have undertaken to state. There were no other witnesses to the accident except the colored boy operating the elevator. He did not appear as a witness in the case, and defendants explained that they had tried to locate him but had been unable to do so. Plaintiff's evidence as to her injuries, consisting of the testimony of lay witnesses, medical experts and her own testimony was to the effect that she had been rendered a helpless cripple, confined to her home since the accident, was unable to walk without the aid of a crutch and had suffered serious and painful injuries. Defendants' evidence was that plaintiff did not sustain the injuries claimed. Concerning the accident defendants' evidence was that Vernon Brown, the colored boy, who was operating the elevator at the time, was not in their employ and had never been employed by them at any time and that he was operating the elevator without their knowledge or consent in violation of their directions and instructions to their employees in charge of its operation.

At the close of all the evidence the respondents (defendants) requested five instructions. One, a peremptory instruction in the nature of a demurrer to the evidence, was refused. Four instructions numbered 8, 9, 10 and 11 were given, to which action of the court appellant objected and excepted. Respondents' instructions 8 and 9 relate to the assessment of damages should the finding be for plaintiff. Their instruction 11 has to do with the burden of proof, and instruction number 10 relates to contributory negligence. Appellant assigns the giving of instructions numbered 8, 9 and 10 as error. Instruction number 10 is as follows:

"The court instructs the jury that if you find from the evidence that the plaintiff herself was careless or negligent, and that such negligence or carelessness of the plaintiff directly contributed to the injury which she sustained, the plaintiff cannot recover damages in this case even though the defendants were negligent, and your verdict should be for the defendants."

One contention made by appellant is in substance that the averment in respondents' answer, "that if plaintiff was injured at the time and place and in the manner mentioned in her petition" such injuries "were caused by the carelessness and negligence of the plaintiff which negligence and carelessness directly contributed to the plaintiff's injuries, if any, sustained, and without which said injuries would not have occurred," amounts to no more than an attempt to plead contributory negligence; that it states no issuable facts, is

simply the averment of a legal conclusion, and therefore does not plead contributory negligence and the submission of that issue to the jury was not, under the answer, authorized. Appellants cite Benjamin v. Metropolitan Street Rys. Co., 245 Mo. 598, 151 S. W. 91; Harrington v. Dunham, 273 Mo. 414, 202 S. W. 1066, and Hanke v. City of St. Louis (Mo. Sup.), 272 S. W. 933. In Hanke v. City of St. Louis the only allegations in defendants' answer imputing negligence on the part of plaintiff was the averment "that the injuries sustained by plaintiff, if any, were due to her own carelessness and negligence while walking over and upon the sidewalk as described in plaintiff's petition." It was ruled that the answer did not, in legal effect, plead contributory negligence, and that the trial court erred in submitting that issue to the jury under an answer which did not plead the affirmative defense of contributory negligence. As has been repeatedly said contributory negligence is an affirmative defense and the facts constituting the negligence charged against plaintiff should be pleaded. Respondents in effect say that their answer sufficiently pleads general negligence and that a charge of general negligence, which is not challenged, is good after verdict and will support a judgment. "But even in the pleading of general negligence the facts must be stated with sufficient certainty to point the adversary to the event or the occurrence in the happening of which or in the suffering of which to happen, negligence is charged." [Benjamin v. Rys. Co. (supra).] It is doubtful under the authority of the cases cited by appellant that the answer sufficiently pleads even general negligence. However, in this case appellant seems to have considered, recognized and treated contributory negligence as being an issue in the case. The pleadings are addressed to the court and state the issues to the court and the adverse party. Appellant did not file a motion to require respondents to make the answer more specific, definite and certain or otherwise object, at any stage of the trial, to the sufficiency of the answer to raise the issue of contributory negligence, and the pleadings were treated, by the parties, as sufficient to formulate, and direct the court's attention to, that issue. Plaintiff's instruction covering the case and hypothesizing the facts upon which she relied for recovery and directing a finding for plaintiff concluded with this proviso: "If you find that at the time the plaintiff was in the exercise of ordinary care for her own safety." Respondents insist that appellant's instruction invited their instruction number 10 on the issue of contributory negligence, to which appellant replies that, even so, it did not invite an erroneous instruction. The instructions in a case state the issue to the jury. It cannot be said that appellant concurred or acquiesced in the giving of respondents' instruction 10 to the jury. She objected and excepted and here assigns the instruction as error.

Though the facts constituting negligence on the part of appellant were not specifically pleaded and defendants' answer, its sufficiency being unchallenged, be considered as a good plea of general contributory negligence, respondents were not thereby relieved of the requirement that their instruction, directing a finding in their favor upon that issue, specify the acts or omissions, appearing in the evidence and which, under the law, would constitute negligence. The instruction is even more general than the plea. It is too general to constitute a direct guide for the jury and amounts to what is commonly termed a roving commission. It fails to advise the jury, or point out in any way, what acts or omissions on the part of plaintiff, if any, found by them from the evidence, would constitute contributory negligence. It permitted them to base a finding for defendant ''on any theory of negligence which they could construct or evolve out of their own minds and was therefore erroneous.'' [Owens v. McCleary, 313 Mo. 213, 281 S. W. 682; Benjamin v. Rys. Co. (supra); Harrington v. Dunham (supra).] If contributory negligence was available as a defense the giving of defendants' instruction 10 was error.

Respondents however assert, that appellant failed to make a case for the jury, that their demurrer to the evidence at the close of all the evidence in the case should have been sustained, and for that reason appellant is not in position to complain of errors, if any, in the instructions. In this connection respondents say that the evidence is insufficient to show that the relationship of master and servant existed between them and the boy, Vernon Brown, who was in charge of and operating the elevator at the time of appellant's injury. We have stated the circumstances and evidence immediately relating to the injury, and the evidence is ample and substantial to support a finding that Brown handled the elevator in a negligent manner causing appellant to fall and sustain injuries. It is admitted that defendants were in possession and control of the hotel, conducting a public hotel business. The two women, passengers on the elevator at the time, testified that having had lunch in the hotel dining room on the first floor they entered the elevator to go to their rooms on the third floor and found this boy at the elevator and in charge thereof. It was at this time that appellant leaving her room on the second floor, intending to descend to the first floor, gave the signal for the elevator. Brown was openly operating the elevator and ostensibly in charge thereof, serving the defendants' guests in the course of defendants' business. The elevator was in the possession and under the control and management of the defendants for the use of their guests. ''The relation of master and servant is prima-facie established where it is shown that the alleged servant was performing labor for defendant

at the time of the injury or that he was in possession of property of the owner and using it in his service at the time of the injury." [39 C. J. 1361.] Prima-facie a person found doing a service for another is in the other's employ. [Perry v. Ford, 17 Mo. App. 212; Margulis v. National Enameling & Stamping Co., 324 Mo. 420, 23 S. W. (2d) 1049.] We think the rule which is followed in that line of cases wherein a person is injured, by a vehicle driven by some person other than the owner, that proof of the ownership of the vehicle is prima-facie evidence that the driver who, by his negligent operation thereof, caused the injury, is a servant of the owner, applies with even greater force in the instant case. Brown was on defendants' premises, stationed upon defendants' elevator ostensibly in charge thereof, receiving and conveying defendants' guests as passengers thereon and performing this work which was a part of and in the course of defendants' business. This showing allows the reasonable inference that Brown was in charge of the elevator by authority of respondents and established prima-facie the relationship of master and servant between respondents and Brown. If the facts were such as to exempt respondents from liability for Brown's negligent acts it devolved upon them to make such showing. Respondent Gottschick was the only witness who testified on behalf of respondents relative to facts touching the operation of the elevator. The testimony of respondents' other witnesses related solely to the nature and extent of appellant's injuries. From Gottschick's testimony we glean the following statement of facts as related by him. He was personally in charge of the hotel as manager and was present in the hotel on the date of the accident, for sometime immediately before and at the time thereof. Two elevator operators, Michael Johnson and Gentry McCullough, were regularly employed and were on duty that day. Brown was related to McCullough. Gottschick had previously instructed these two elevator operators "not to permit any substituting except by an experienced operator or a bell boy who had had experience." "There was a convention on and the hotel was pretty well filled up." A clerk was constantly on duty at the desk and the elevator "is just a few feet from the desk." "As soon as" he heard of the accident Gottschick went to the elevator and found Brown in charge thereof. Brown "was running the elevator without my consent." Gottschick stated he "didn't know how long he (Brown) had been running it, whether it was five minutes or two hours." On direct examination these questions were asked and answers given:

"Q. Was Vernon Brown an employee of yours? A. He was not. Q. Had he been employed by you? A. He had never been employed by me."

Appellant had testified that Gottschick came to her room after the accident and said: "My partner and I very much regret this accident.

We carry insurance and the doctor will be paid and what you pay the nurses will be paid back to you.'' Gottschick stated: ''I told Mrs. Schide that I would see that her doctor bills and nurse's bills were paid and I would take care of them.'' However, respondents did not pay these expenses. Gottschick further testified that ''Vernon Brown was incompetent to operate the elevator and it was highly improper for him to operate it,'' and explained his failure to call Vernon Brown as a witness, saying, that he had tried to locate Brown but was unable to do so. He testified that the two elevator operators, Johnson and McCullough, were present in the court room. However, they were not called as witnesses. Respondents' position seems to be that since Gottschick testified that Brown was not employed by him and had never been employed by him appellant's prima-facie showing that the relationship of master and servant existed was thereby refuted and overcome and that the court should have directed a verdict for respondents. The question of whether the relationship of master and servant existed was one of fact to be determined by the jury from all the testimony, facts and circumstances in evidence and the reasonable inferences arising therefrom. The weight of the evidence and the credibility of the testimony is for the jury. It is not to be assumed by the court as a matter of law that evidence is true ''from the mere fact that no one by words contradicted what is uttered.'' [Gannon v. Gas Light Co., 145 Mo. 502, 46 S. W. 968.] ''If the facts present no conflict and furnish the basis for but a single inference, and that favorable to the master, his freedom from liability is to be determined by the court as a question of law. On the other hand, if there is a conflict in the evidence, or more than one inference can be drawn from it . . . it is for the jury to determine whether the relation of master and servant existed at the time of the injury.'' [39 C. J. 1361.] The evidence shows with certainty that respondents were in the control and management of the elevator, operating same in carrying on their hotel business, and we think the circumstances tend to show and allow the inference, as well as certain statements in respondent Gottschick's testimony, that Brown was performing a service in their behalf in that connection with at least the implied assent of respondents and as their servant for the time. From Gottschick's testimony it appears that the elevator operators were authorized to use a substitute. Gottschick, however, says that he instructed them to substitute only ''an experienced operator,'' but it does not appear that the elevator operator in calling a substitute to act temporarily for him was required to first advise or inform Gottschick or any other person in authority at the hotel and obtain assent thereto. The competency of the sub-

stitute was apparently left to the judgment of the operator. A substitute thus placed temporarily in charge of the elevator by one of these operators, having as he did authority from the master to use a substitute, became during that time a servant of respondents. [Weatherman v. Handy (Mo. Sup.), 198 S. W. 459.] Brown was related to one of the operators on duty that day. Both the regular operators were present in the court room. A jury would have the right to infer from all the circumstances and defendant's failure to call these operators as witnesses that Brown had been substituted by one of them, thereby making him respondents' servant. One charge of negligence against defendants is that they ''negligently permitted said elevator at said time and place to be in charge of an inexperienced, unskillful and incompetent operator.'' Respondents do not account for Brown being in charge of the elevator. Assuming that Brown had not been employed by Gottschick directly and had not been delegated by anyone having such authority to operate the elevator, but as an interloper or imposter took charge of the elevator and assumed to carry on the operation thereof for the benefit of respondents' guests, nevertheless if respondents negligently permitted him to do so, and by the exercise of that degree of care imposed by law upon respondents both as innkeepers and carriers could have prevented him from doing so, they would be liable for appellant's injuries caused by Brown's negligent acts. Appellant was justified by the situation and appearance in assuming that Brown had authority to operate the elevator and was competent to do so. Respondents admit that Brown was ''not competent to operate the elevator.'' Gottschick, the manager, was present in the hotel. He says he had regular elevator operators employed and on duty. A clerk was on duty at the desk within a few feet of the elevator and with an unobstructed view thereof. When the women passengers boarded the elevator at the first floor Brown was stationed in the position usually occupied by the operator and apparently in charge of the elevator. It would seem that had the regular operators, who respondents say were in charge of the elevator, exercised reasonable care they would have discovered and known that Brown was assuming to operate the elevator, and if he had been operating it for any appreciable time it is likely that the elevator operators and the clerk on duty nearby would have observed his acts. These two employees, however, were not called as witnesses, and it does not appear for what length of time Brown had been operating the elevator. A jury might well infer from all the facts and circumstances in evidence that Gottschick or his employees in control of the elevator knew, or if they had exercised at least reasonable care must have known, that Brown was operating the elevator and that

they negligently permitted him to do so. We think there were issues of fact made for the jury, and that the case was properly submissible, under correct instructions, to the jury.

The evidence shows, and it was admitted by appellant, that in 1921 she was injured in an automobile accident. The respondents contended that if she was suffering from any present disability same was due to the previous injuries and not the elevator accident. Appellant complains of respondents' Instructions 8 and 9 relating to the assessment of damages in the event the jury found for plaintiff. Ordinarily with a situation such as we have in this case, the verdict being for the defendant and plaintiff appealing, the appellant would not be in a position to rely on a claim of reversible error in defendants' instructions on damages because the jury did not make a finding as to damages and apparently error, if any, in respondents' instructions relating solely to the assessment of damages did not prejudice appellant's rights. However, we are constrained, in this instance, to take notice of appellant's complaint. These instructions are so worded as to be confusing and seem to tell the jury that they should not consider any aggravation of the previous injuries in assessing damages. Under the evidence the jury may have considered defendants were negligent and that appellant's former injuries were aggravated as a result thereof; but, under the instructions, not have allowed her damages because no new or independent injuries were found to exist and aggravation was by the court excluded. Certainly in an action for personal injuries the plaintiff is not entitled to recover damages for conditions that are due entirely and wholly to previous disease or injuries, which was perhaps what respondents intended to, but did not, say in their Instruction 9. The rule is that the plaintiff in a personal injury action may recover for the aggravation of existing ailments caused by the negligent acts of defendant. [Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709; Kiefer v. City of St. Joseph, 243 S. W. (Mo. Sup.) 104; Maloney v. United Rys. Co., 237 S. W. (Mo. Sup.) 509; Gillogly v. Dunham, 187 Mo. App. 551, 174 S. W. 118; Koonse v. Standard Steel Works Co., 221 Mo. App. 1231, 300 S. W. 531. The aggravation, if any, of appellant's former injuries should not have been eliminated from the consideration of the jury.

Appellant assigns error in the refusal of the trial court to permit her, on cross-examination, to fully interrogate two of respondents' expert medical witnesses and sets out certain questions, propounded with a view to showing interest and bias on the part of these witnesses in behalf of respondents to which the court sustained objections. These witnesses, one from Independence, Kansas, and one from Tulsa, Oklahoma, testified as medical experts. Their testimony sharply contradicted appellant's

evidence concerning the permanency and nature of her injuries and tended to minimize the effect of such injuries. Appellant should have been allowed wide latitude, on cross-examination, in propounding questions tending to show bias or interest of the witnesses, or motive inclining them, in favor of respondents. Appellant was entitled to show the interest, if any, of the witnesses as affecting their credibility and the weight of their testimony. [Hall v. Fulton Iron Works (Mo. Sup.), 31 S. W. (2d) 81; Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 251 S. W. 477; Snyder v. Wagner Electric Mfg. Co., 284 Mo. 285, 223 S. W. 911.] From a reading of the record it appears that the questions were propounded in good faith. Nevertheless, as we note the rather full cross-examination permitted, we do not think the action of the court in sustaining the objections to these particular questions, under the circumstances, could be considered as having materially affected the merits of the action and as constituting reversible error. As the case is to be remanded it is not likely that the error complained of, in this respect, will occur on a retrial.

For errors noted in the instructions to the jury the judgment is reversed and the cause remanded. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.