CLARENCE L. CLASON v. JOSEPH C. LENZ, Appellant.—61 S. W. (2d) 727.

Division One, June 12, 1933.*

*Brown, Douglas & Brown* for appellant.

*NOTE: Opinion filed at October Term, 1932, April 20, 1933; motion for rehearing filed; motion overruled at May Term, June 12, 1933.

1114

*James H. Hull, Melvin J. Duvall* and *W. J. Boyd* for respondent.

HYDE, C.—This is an action for damages for plaintiff's personal injuries and damage to his automobile, which resulted from plaintiff's automobile skidding and striking some electric light poles on defendant's truck and trailer. The negligence charged in plaintiff's petition is that defendant negligently parked his truck and trailer thereto attached, loaded with forty-five-foot electric light poles, on the pavement of State Highway No. 1, in violation of the warnings of the State of Missouri and contrary to custom; that he allowed them to remain parked there so near to a curve that they obstructed the view of persons traveling westwardly on the highway; and that he thereby created a dangerous obstruction on the highway, of which he negligently failed to give any signal or warning.

Defendant's answer admitted parking his truck and trailer on the pavement and that plaintiff collided with it, but denied all other

allegations and set up as contributory negligence on the part of plaintiff the following facts:

"Plaintiff was traveling at a high and dangerous rate of speed, in excess of forty-five miles per hour; that the highway was wet and slippery; that plaintiff saw, or in the exercise of the highest degree of care could have seen the defendant's truck and trailer when plaintiff was from eight hundred to one thousand feet from the same, and in ample time to have stopped or slowed down his automobile and to have thereby avoided the collision; that nevertheless, plaintiff knowing the slick and slippery condition of the highway and the position of said truck and trailer thereon, negligently failed to stop his automobile, to slacken the speed thereof, or to take any other steps to avoid colliding with said stationary truck and trailer; that plaintiff negligently failed to keep a lookout for automobiles coming from the opposite direction, and negligently undertook to pass to the south of said truck and trailer, without first having ascertained whether any automobile was approaching upon the highway from the opposite direction; that plaintiff negligently continued to operate his automobile in the manner above described until he ran into and collided with said truck and trailer."

State Highway No. 1 was a much traveled road, at the time the only paved highway through Holt and Andrew counties leading to St. Joseph and Kansas City. The pavement was concrete, eighteen feet wide. The scene of the accident was seven or eight miles west of Savannah. Measurements by an engineer, who was defendant's witness, showed that the highway near this place went down grade west from the top of a hill for a little more than 1,000 feet, then curved to the north on an eight-degree curve. About 130 feet from the beginning of the curve, there was a private driveway leading to a farmhouse. Defendant and his brother each owned trucks and were hauling poles, which were to be used in the construction of an electric line. This line ran along the highway to the point of the curve and thence on west, across a pasture. The truck and trailer belonging to defendant's brother, loaded with poles for that part of the line, had been driven off the highway, nearly to the pasture gate just west of the beginning of the curve, where his trailer stuck in a mudhole. Defendant drove up with his truck and trailer, likewise loaded with poles, and went to assist his brother in extricating his trailer from the mudhole. Defendant's testimony was that he left his truck on the north half of the pavement with the back end of the poles about forty-five feet west of the farm house driveway; that poles were forty-five feet long and rested upon both the trailer and the part of the truck behind the cab; and that from the cab to the front end of the truck was about ten feet, so that the truck, trailer and poles took up about fifty-five feet of the highway. The front end of the truck was,

therefore, about thirty feet from the beginning of the curve. Plaintiff's evidence placed it perhaps ten or fifteen feet closer. The cab of the truck was seven or eight feet high and four and one-half to five feet wide. The poles stuck out fifteen or twenty feet behind the end of the trailer. The truck, as parked, came about to the center of the highway so that only one car at a time could pass on the pavement to the south of it. On the north side of the road, there was a bank seven or eight feet high, which somewhat obstructed the view of the highway beyond the curve. It had rained that day and the shoulders of the highway were muddy. Defendant's truck was left unattended, without any signal or warning, on the highway, to show it was there, except that there was a red flag on the end of the poles. Defendant admitted that he knew it would obstruct the view of persons driving over that road, to a certain extent, to park there.

Plaintiff was a student minister, who preached at a church in Holt County every other Sunday. He had been over this part of the road five times. The date of the accident was Saturday, the 16th day of November, 1929. The evidence was that it had rained hard that day; that the road was wet and slippery, and that it was misting rain at the time of the collision. Plaintiff's evidence was that he came over the top of the hill driving west, about 4:30 P. M., which was about fifteen minutes before sunset; that it was cloudy and dusky, but "not dark enough you would turn your lights on yet." Plaintiff testified that he was driving twenty to twenty-two miles an hour. He based that upon his calculation of the distance traveled and the time he left St. Joseph. He admitted, however, that it was usually only possible to estimate speed within ten or fifteen miles either way, and that his first guess was thirty miles per hour. A State Highway employee, who drove behind him, estimated his speed at thirty to thirty-five miles an hour, while defendant and his brother, who saw the collision, from the truck stuck in the mud, estimated it as high as thirty-five to forty miles per hour. Plaintiff, on direct examination, said that he first saw the truck when he was about 400 or 500 feet from it; that he could not then tell whether it was moving or standing still; and that probably about 200 feet from it he knew it was standing still. He said that when he was satisfied the truck was parked he slowed down to approximately fifteen miles per hour; that somewhere between 100 and 200 feet from the truck he turned out to the left to go around it; and that when he was about 100 feet from the truck he saw an eastbound Ford automobile near the point of the curve.

On cross-examination plaintiff said:

"I began to slow down then when I saw that eastbound car. . . . I began to apply the brakes very slightly (about 100 feet away) . . . because there was danger of skidding if you applied

your brakes hard on a slick pavement. . . . I didn't know how fast the other car was going. . . . It might have gotten by before I got there. . . . I knew that I could not (pass) unless that car was coming at a rapid speed and fast enough to get by before I got there. . . . I would hit the truck or the oncoming Ford or would have to stop. . . . I believed I could turn back in and stop and avoid a collision. . . . I tried to stop in possibly—25, 15 or 30 (feet)—somewhere along there. . . . I don't know how many feet away I was but I felt that I was not going to be able to stop and that the poles would hit the front end of my car. . . . I am satisfied that I slid down the pavement four or five feet or more. After the car went crossway of the road it kind of skidded against the poles. . . . I know I skidded five or six feet.''

Plaintiff's car did skid against the east end of the poles and he claimed that he was injured and his car was damaged. There was evidence that plaintiff's car skidded as far as fifteen or twenty feet. Plaintiff said that he could not remember the distances exactly; ''a man cannot be exact, everything said in the case of an accident is approximate;'' that ·he thought all the time he had his car under control; but that he was mistaken. Plaintiff's testimony was somewhat conflicting as to some incidents and uncertain as to speed and distances and therefore might be capable of more than one construction by a jury. Defendant also had evidence that plaintiff told him, after the collision, that he was not hurt; and that plaintiff stopped near the scene of the accident when he returned on the following Monday and told the foreman building the electric line that he did not get hurt. This foreman also said that plaintiff then told him about the accident and said that he thought he had plenty of clearance to go around the pole wagon and did not slow down, but that as he got to the poles he saw another car coming, applied his brakes and slid into the pole truck. Plaintiff denied having this conversation at all.

■ The defendant was successful in the trial court, obtaining the verdict of the jury. Thereafter, the court granted a new trial upon plaintiff's motion because it considered it had erred in giving defendant's Instructions I and K. Defendant has appealed from this order of the court granting a new trial. While practically conceding that these two instructions were erroneous, defendant says that its demurrer to the evidence should have been sustained because defendant was guilty of no negligence which was the proximate cause of the collision, and that plaintiff was guilty of contributory negligence as a matter of law. Of course, if either of these contentions could be sustained, erroneous instructions would be immaterial. [Bello v. Stuever (Mo.), 44 S. W. 619, and cases cited.] However, we think that whether defendant was negligent, whether such negligence was an efficient cause of the collision, and whether there was contributory

negligence of the plaintiff, were all matters about which reasonable minds might differ, and were, therefore, all questions for the jury. In determining whether a demurrer to the evidence should have been sustained we must keep in mind the rule that "the whole evidence, whether offered by plaintiff or defendants, must be searched and the plaintiff given the benefit of any and all facts and circumstances favorable to or tending to support her (his) theory of the case and every reasonable inference deducible therefrom, while evidence on the part of and favorable to the defendants, which is contradicted, must be excluded." [Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S. W. (2d) 809; see, also, Armstrong v. Mobile & Ohio R. R. Co., 331 Mo. 1224, 55 S. W. (2d) 460; Grubbs v. Kansas City Pub. Serv. Co., 329 Mo. 390, 45 S. W. (2d) 71; Clark v. Atchison & Eastern Bridge Co., 324 Mo. 544, 24 S. W. (2d) 143.]

 Undoubtedly, the jury would be justified in finding that it was negligence to park the truck and trailer, which, with its load, took up fifty-five feet of the highway, with the poles sticking over the pavement fifteen or twenty feet behind it, entirely covering half of the paved portion of the highway so near the curve, in approaching twilight, and to leave such an obstruction there unattended without any light or other plain warning signal. Defendant argues that even if this was negligence, it could not have been the proximate cause of the collision because plaintiff saw it, saw the Ford approaching, and was fully advised concerning the whole situation in time to have stopped his automobile and thus avoided any collision; and that, therefore, no negligence of the defendant had anything to do with the situation which developed from then on. Such an argument, however, must be based upon an assumption that plaintiff was negligent from that point on, and that his negligence was the sole cause of the collision or was contributory negligence as a matter of law. We do not think that either premise can be so clearly and irrefutably established that reasonable minds could not entertain any other view, if we consider the matter, as we must, from the evidence most favorable to plaintiff. This evidence was that plaintiff's testimony fixing distances was not exact but approximate. It justified a finding that he did not see the other car until it rounded the curve because visibility was poor and his view beyond the truck was obstructed by it; that he was not more than 100 feet from the truck then but was farther from it than the other car; that he did not put on his brakes to stop but only to slow down because he did not know how fast the other car was traveling, and it seemed that it might pass the truck before he got to it; that there was also danger of skidding if he applied them too quickly; that he did slow down for the other car to pass and leave the way clear for him to get by; but that he found he had either misjudged the distance or the speed of

the approaching car and skidded into the poles when he did apply the full force of his brakes in an attempt to stop. While defendant points out plaintiff's admission that he was mistaken in his judgment, defendant admits that the rule is that, when the driver of an automobile is confronted by an emergency not arising from his own negligence without sufficient opportunity to plan his course of conduct, the fact that he errs in his judgment, or is mistaken about the space in which he has to move, or for the moment forgets and encounters another danger, will not necessarily convict him of negligence as a matter of law. [See Menard v. Goltra, 328 Mo. 368, 40 S. W. (2d) 1053; Clark v. Atchison & Eastern Bridge Co., 324 Mo. 544; 24 S. W. (2d) 143; Mayne v. May Stern Furniture Co. (Mo. App.), 21 S. W. (2d) 211; Iman v. Freund Bread Co., 332 Mo. 461, 58 S. W. (2d) 477.] Defendant argues that there was no such emergency here but supports this argument by the testimony most favorable to him and by inferences, unfavorable to plaintiff, drawn therefrom. We hold that whether or not there was such an emergency, under the evidence, in this case, was a jury question, and that it was for the jury to judge the conduct of both plaintiff and defendant. The demurrer to the evidence was correctly overruled.

At the request of defendant the court gave the following instructions:

"Instruction I. The court instructs you that the law did not permit plaintiff to rely solely upon any duty that may have rested upon the defendant, if any, with respect to leaving or not leaving standing upon the highway the truck and trailer described in evidence, and that it was plaintiff's duty under the law in driving and operating his automobile, to exercise the highest practical degree of care to avoid striking or coming in contact with said truck or trailer; and *if you should believe from the evidence that plaintiff failed to exercise the highest practical degree of care to avoid coming in contact with said truck or trailer, and that such want of care on his part contributed in any way directly to cause the injuries sustained by him, if any, then you must find your verdict for the defendant.*

"Instruction K. The court instructs you that if you should believe and find from the evidence that plaintiff saw, or while in the exercise of the highest practical degree of care could have seen the automobile described in evidence approaching from the west at the time plaintiff was injured, in time, *by the highest practical degree of care, to have avoided coming in contact with the truck or trailer upon the highway, then it is not material whether the defendant was or was not guilty of any negligence* in leaving said truck and trailer standing upon the highway, *and disregarding all other facts and circumstances in evidence, you must find your verdict in favor of the defendant.*"

These were the only instructions upon the issue of contributory negligence except the reference thereto in plaintiff's Instruction 1 hereinafter referred to. The trial court was right in holding that it was error to give them. This court recently passed upon and held erroneous a similar instruction in Schide v. Gottschick, 329 Mo. 64, 43 S. W. (2d) 777. There the jury were instructed that if they found that plaintiff "was careless or negligent, and that such negligence or carelessness of the plaintiff directly contributed to the injury which she sustained, the plaintiff cannot recover damages in this case even though the defendants were negligent." This court, there, said of such an instruction:

"It is too general to constitute a direct guide for the jury and amounts to what is commonly termed a roving commission. It fails to advise the jury, or point out in any way, what acts or omissions on the part of plaintiff, if any, found by them from the evidence, would constitute contributory negligence. It permitted them to base a finding for defendant 'on any theory of negligence which they could construct or evolve out of their own minds, and was therefore erroneous.' [Owens v. McCleary, 313 Mo. 213, 281 S. W. 682, 685; Benjamin v. Ry. Co., supra; Harrington v. Dunham, supra.] If contributory negligence was available as a defense the giving of defendants' Instruction 10 was error."

Defendant, however, says that:

"If they were erroneous, and we concede that they might have been in the absence of other factors, they were invited by, and were predicated upon plaintiff's instruction numbered one. They were narrower and less harmful, if degrees of harm there be, than plaintiff's instruction numbered one. Any error in the case arising from these instructions was produced and brought into the case by instruction one, and instead of being enlarged and increased by defendant's instructions 'I' and 'K,' it was reduced and confined. It would seem to us that plaintiff's attorneys are in no position to complain of these instructions."

The plaintiff's instruction referred to was its instruction covering the whole case hypothesizing the facts, which, if found by the jury, would authorize a recovery for the plaintiff. After stating these required facts, this instruction also added the following further requirement: "And that at said time and place plaintiff was exercising the highest degree of care in the driving and operation of his automobile."

Defendant relies upon Carr v. City of St. Joseph (Mo.), 225 S. W. 992. In that case, plaintiffs were granted a new trial because the defendant's instruction, which authorized a verdict for it on the theory of contributory negligence, only required that plaintiffs' neglect "contributed in any degree." This court held that this instruc-

tion was wrong because contributory negligence which would constitute a bar to plaintiffs' recovery "must enter into and form a part of the efficient cause." However, this court held that this error did not authorize granting a new trial for two reasons. First, defendant's criticized instruction in the Carr case hypothesized to the jury the facts which it must find in order to find that plaintiffs were guilty of contributory negligence. The court said of it:

"If an instruction on contributory negligence requires the finding of negligent acts which, in the nature of things, necessarily contributed directly to cause the injury and necessarily formed a part of the efficient cause thereof, then the instruction cannot be held erroneous because it does not require the jury to draw the inference which the law itself draws therefrom. In this case it is difficult to see how the facts, required by Instruction 4 to be found before a verdict for defendant was authorized on the ground of plaintiffs' negligence could exist without forming a substantial part of the efficient cause of the happening; that is, how they could have contributed at all to the fatal result unless they contributed in the manner required by the rule stated."

Second, this court also held that plaintiff's own instruction instructed the jury that the same facts, which the defendant's instruction told them would bar plaintiff's recovery if they contributed in any degree, "authorized a finding for defendant without any requirement that the negligence of plaintiff's contributed at all to the accident." This court said: "The error in defendant's instruction was thus clearly invited, and cannot be availed of to sustain the order granting the new trial." Saying that a plaintiff cannot complain of a defendant's instruction as insufficient, when that plaintiff sets out himself the same facts (as does defendant) and tells the jury they would amount to contributory negligence (as in the Carr case), is far different from saying that a plaintiff, by stating in his instruction that it was essential to his recovery that he used a certain degree of care, invited an instruction by defendant that its affirmative defense of contributory negligence could be established without requiring the jury to find any of the facts on which it was alleged to rest.

The same contention which the plaintiff makes here was, however, made and overruled in Schide v. Gottschick, supra. Concerning that contention, this court there said:

"Plaintiff's instruction covering the case and hypothesizing the facts upon which she relied for recovery and directing a finding for plaintiff concluded with this proviso: 'If you find that at the time the plaintiff was in the exercise of ordinary care for her own safety.' Respondents insist that appellant's instruction invited their Instruction No. 10 on the issue of contributory negligence, to which appellant replies that, even so, it did not invite an erroneous instruction.

The instructions in a case state the issue to the jury. It cannot be said that appellant concurred or acquiesced in the giving of respondents' Instruction 10 to the jury. She objected and excepted and here assigns the instruction as error.''

The only difference between the Schide case and this case is that, there, plaintiff's answer setting up the defense of contributory negligence pleaded it only in general terms, while here the defendant specifically pleaded the acts which it contended constituted contributory negligence. This court, however, said in the Schide case that although the plaintiff did not challenge the sufficiency of the answer and it would therefore ''be considered as a good plea of general contributory negligence, respondents were not thereby relieved of the requirement that their instruction, directing a finding in their favor upon that issue, specify the acts or omissions, appearing in the evidence and which, under the law, would constitute negligence.''

Certainly, in view of that decision, there can be no justification for defendant, here, relying upon certain specific facts as constituting contributory negligence, submitting the matter to the jury under instructions, which did not require them to find those facts or any other facts existed in order to bar plaintiff's recovery because of contributory negligence; but instead allowed them to deny him recovery because of anything they might imagine, construct or evolve in their own minds as want of care on his part. We hold that these instructions were error; that the error was neither invited nor waived, and that the trial court properly granted plaintiff a new trial because of this error.

The order granting a new trial is affirmed and the cause remanded. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All of the judges concur.