Geraldine HOPKINS, Plaintiff-Appellant,

v.

J. I. CASE COMPANY, a Corporation, Defendant-Respondent,

and

Ina Schmucker, Administratrix of the Estate of John E. Schmucker, Deceased, Defendant.

No. 44967.

Supreme Court of Missouri.

Division No. 2.

Sept. 10, 1956.

Clay C. Rogers, Lyman Field, James W. Benjamin, Kansas City, V. J. Bowersock, Columbus, Kan., for plaintiff-appellant, Rogers, Field & Gentry, Kansas City, of counsel.

Albert Thomson, Kansas City, for defendant-respondent, Davis, Thomson, Van-Dyke & Fairchild, Kansas City, of counsel.

BARRETT, Commissioner.

On Friday evening, about 10:30, December 28, 1951, the plaintiff, Geraldine Hopkins, was the guest of Joseph Horton as he drove south on U. S. Highway 69 in Johnson County, Kansas, and his automobile was involved in a collision with an automobile owned and driven by John E. Schmucker. The collision resulted in serious personal injuries to Miss Hopkins and to recover damages for her injuries she instituted this action against Mr. Schmucker's administratrix, his wife, and his employer, the J. I. Case Company. Upon the trial of the cause a jury returned a verdict in favor of the plaintiff in the sum of $100,000. The trial court granted a new trial as to both defendants but upon this appeal by the plaintiff we are concerned only with the propriety of the trial court's action in sustaining the Case Company's motion for judgment in accordance with its previous motions for a directed verdict. As to the Case Company, the sole question upon the trial of the case and here is whether there is any evidence in the record from which it is a reasonably permissible inference that Mr. Schmucker was, at the time and place of the collision, an agent of the company and was operating his automobile in the scope and course of his employment.

The J. I. Case Company maintains a branch office in Kansas City and Mr. Schmucker and his wife lived in Kansas City. Mr. Schmucker was a territory supervisor or "block man," and his territory consisted of several counties in Missouri and Johnson and Miami Counties in Kansas. Generally, it was Mr. Schmucker's duty to call on and supervise farm machinery dealers in his territory, rendering them and his company every possible service. It was also his business to procure new dealers. He was paid a monthly salary and a commission. The company furnished him with an automobile and, upon weekly expense sheets, paid the cost of storing, maintaining and operating the automobile. The supervisors attached to their

weekly expense accounts route sheets indicating the dealers or customers of dealers upon whom they expected to call the following week.

On December 28 when Mr. Schmucker was involved in the collision in Johnson County he was en route from Oklahoma City to Kansas City. Oklahoma City was Mrs. Schmucker's home, she was born and reared there, her mother, her aunt and numerous cousins lived there. No part of Oklahoma was in Mr. Schmucker's territory and the immediate occasion for the trip was that Mrs. Schmucker's sister, who had lived in Germany for some years, was returning to the United States and Mr. and Mrs. Schmucker expected to and did spend the Christmas holidays with her sister and her family. Mrs. Schmucker said, "We went to spend Christmas with the family primarily, I suppose, because she was coming back. It had been some time since we had seen her." As to herself, she said, "For me it was a vacation. I was on vacation." As to her husband, she said, "No, I don't suppose he would call it a vacation. It was as near a vacation as they had." Incidentally, while the Schmuckers were in Oklahoma City they made a seventy-mile trip to Wanette to look after some property "owned jointly by my family."

One further preliminary matter should be noted and that is the fact previously mentioned that on the trip to Oklahoma City and return Mr. Schmucker was driving his own automobile and so we are not concerned with an employee's using his employer's motor vehicle for his own pleasure or business. Annotation 122 A.L.R. 858. After the accident the automobile furnished Mr. Schmucker by the company for use in his territory was found stored in a garage with, according to the company's evidence, the company's files, catalogues and other material in the trunk and in a brief case in the car. The office manager said that it was not the practice for employees to use their own cars on company business and that the company had not previously paid any expense for Mr. Schmucker's personal automobile. The branch manager said that territory supervisors were not permitted to use their personal automobiles on company business unless they received prior authority from the branch office and that Mr. Schmucker had neither requested nor received such authorization. The most favorable view of the evidence showing any use whatever of Mr. Schmucker's personal car on company business came from the testimony of Mrs. Schmucker: "Q. Now, I want you to tell the jury if it is true that on occasion he did use his own automobile in making calls and trips for the J. I. Case Company? A. Occasionally on Monday if he were taking a short trip and he wanted an opportunity to have his company car overhauled or oiled and so forth he would drive his own car out, if he knew he were going to come back, and on Saturday maybe, if we were going to combine maybe grocery shopping with some business. Q. And so it wasn't an unusual or infrequent thing that he used his own automobile in the business of the Case Company? A. Not—well, for short trips usually."

The background of the appellant's claim of agency in Mr. Schmucker, particularly on his return trip, is a letter from the branch manager, dated December 13, addressed to fifteen specifically named "block men," Mr. Schmucker being number nine on the list. Following the fifteen names, this is the letter:

"We will follow the practice practised in the past and it will be perfectly all right for you to remain at headquarters for the period from December 22nd to January 2nd.

"We realize that many of our dealers are not inclined to concentrate on business matters during this period and at the same time we will be interested in saving a substantial amount of expense.

"There are quite a few contracts yet to renew. If any of you want to make definite appointments with dealers to

write them, it will be perfectly satisfactory, and if you do work the territory any, please keep up on the stock orders.

"While you are at headquarters, we believe it will be a good investment on your part to take the time to analyze the orders already placed against the orders that Mr. Humphrey has placed for shipment to the dealers. We believe you can do some good for your dealers and yourself by writing Mr. Humphrey and explaining where orders can be clubbed together to make direct carload shipments to the territory."

It is not claimed that Mr. Schmucker made an appointment with any dealer in his territory during this period or that he called on any dealer or prospective dealer either in or out of his territory. The plaintiff does draw the inference from the letter that December 22 to January 2 was not a vacation period for Mr. Schmucker. And it is claimed that under the direction and authority of the letter Mr. Schmucker did certain work on his company files for the company while on the trip, including the making of an appointment to meet a prospective dealer in Lee's Summit, Missouri, either on Saturday, December 29 or on Monday, December 30, and that he was returning to Kansas City on Friday night for the express purpose of keeping the appointment and was therefore engaged in the course and scope of his employment when his automobile collided with Mr. Horton's automobile and injured Miss Hopkins.

■ In her brief here the plaintiff asserts as a fact and in the examination of the witnesses sought to elicit and establish that Mr. Schmucker was subject to duty and "expected to work his territory at any hour, day or night," in short, she draws the inference that wherever he was and whatever he was doing he was always subject to the control of his employer and in the course and scope of his employment. But aside from the general factitiousness of this extreme position, the mere existence of the relationship of employer and em-

ployee is not sufficient in and of itself to impose liability on the employer in all circumstances for whatever torts the employee may commit. 57 C.J.S., Master and Servant, § 570, pp. 294–296. All acts of an employee are not as an employee, or, necessarily, in the course and scope of his employment. 1 Restatement, Agency, Secs. 228–229, 235. On this trip, however, Mr. Schmucker had one or two brief cases and certain files in his car concerning Case Company business and while on the trip wrote at least one letter connected with his employment and also worked on the files. The appellant points to these circumstances and refers them to the branch manager's letter and its suggestion that "While you are at headquarters, * * * it will be a good investment on your part to take the time to analyze the orders * * placed for shipment to the dealers." The appellant urges, with some adroitness, that Mr. Schmucker "had his company's office with him," that he was therefore continuously engaged upon the company's business and was carrying its office when he met with the mishap in Johnson County.

Mrs. Schmucker and his brother, Charles, testified to the work he did while on the trip. Mr. and Mrs. Schmucker started on the trip from Kansas City on Saturday, December 22. They spent that night with his brother in Hutchinson, Kansas. In summary, Charles said, "On Saturday night he told me that he had a lot of work to do, and that he found it necessary to bring it along with him to do it; and on Sunday morning after breakfast * * * he spread his work out on the dining room table, and we have a desk in the corner of the dining room and he also spread his work out on that." Charles and his family left Mr. Schmucker at his work and went to church and when they returned the Schmuckers had resumed their journey to Oklahoma City. More specifically and in more detail Mrs. Schmucker summed up the matter when she said, "On Saturday morning he sat down at home after breakfast and made out his expense sheet for the week, sending

in part of his reports for the week. At that time he had told me he had some more work to do, and he took along two brief cases, one large one about like this (indicating) that had a complete file of each dealer, and a small one with his current correspondence, and on Sunday morning after his brother and the family left for church we stayed there and he worked on some more of his work. He spread it out and as I remember worked on some stock orders, and specifically wrote a letter back making an appointment with a prospective dealer for Saturday morning on the 29th. That letter we mailed on our way out of Hutchinson." As to the work he did in Oklahoma, Mrs. Schmucker said, "At various times, sometimes for thirty minutes and sometimes for an hour or two hours, he would work on the stock orders and correspondence, and various things that he had to get up to date, and write up new contracts. It was at the time they would be writing new contracts. * * * I can't say in detail what he was doing, but I know that he was working on Case Company papers. Now, I don't know exactly in detail what he was doing. The only thing I specifically remember that he did was in Hutchinson, and he did write the letter." And, in conclusion, she said that he was returning to Kansas City to keep the appointment with the prospective dealer at Lee's Summit. Her sister's return was delayed and for that reason Mrs. Schmucker did not accompany her husband on the return trip.

From these circumstances and the fact that Mr. Schmucker was in Johnson County, Kansas, in the area of his regular territory, when he was involved in the collision about 10:30 on Friday night, the appellant draws the inference of agency and action in the course and scope of his employment. It is urged that these circumstances permit the inference of dual service, 1 Restatement, Agency, Sec. 236; Foster v. Campbell, 355 Mo. 349, 196 S.W.2d 147, and, even if on the trip to Oklahoma he had "temporarily" deviated from his employment that he had reasonably re-entered his territorial area during a period of time not unreasonably disconnected from an authorized period and, therefore, was within the course and scope of his employment, 1 Restatement, Agency, Secs. 233, 234, 237; Thomas v. Slavens, 8 Cir., 78 F.2d 144, within the meaning of the doctrine of respondeat superior. The hard fact remains, however, that the Case Company did not send or direct or even consent to Mr. Schmucker's trip to Oklahoma and there was no Case Company business for him to transact or handle in Oklahoma.

If there is any analogy in the deviation cases it is of but little force; for once it is conceded that Mr. Schmucker, in making the trip to Oklahoma, had deviated from his employment for his own purposes, "he is still upon his own trip, even though engaged in returning to his employment, until he has returned either to the point of his departure from the path of duty, or to a point where, in the performance of his duty, he is required to be." Kinkead v. Management & Engineering Corp., Mo. App., 103 S.W.2d 545, 547. Or as the Kansas court said in considering whether a deviating employee had returned to or resumed his employer's business, "A short answer to this is that Farley left the business of his master on the morning of December 5 for business of his own, and it was his own business to get back to the business of his master." Ruff v. Farley Machine Works Co., 151 Kan. 349, 356, 99 P.2d 789, 793. Compare: Thompson v. Aultman & Taylor Mach. Co., 96 Kan. 259, 150 P. 587. Although he was in Johnson County, within the limits of his territory, Mr. Schmucker had not returned to his point of departure and the next item of business for his company was on the following day at Lee's Summit, twenty miles east of Kansas City on U. S. Highway 50. Likewise, in these circumstances, there is slight analogous force in any presumption "that the relation of master and servant

exists where the servant is working on the premises of the master." Compare: Schide v. Gottschick, 329 Mo. 64, 43 S.W.2d 777; DeHoney v. B–W Brake Co., Mo., 271 S.W.2d 565.

But these are not the conclusively determinative circumstances either for or against the claim of agency and scope and course of employment. They are matters to be considered, generally, but upon this record they are but incidental and collateral. The compellingly determinative factor is the indisputable circumstance that the trip to Oklahoma City was strictly personal to Mr. and Mrs. Schmucker and was in nowise brought about or occasioned by the business of Mr. Schmucker's employer. Mullally v. Langenberg Bros. Grain Co., 339 Mo. 582, 98 S.W.2d 645. The record admits of no other possible or reasonable inference. He was in his territory, operating his automobile, and he may have been carrying his "company office" but neither he nor his office were placed there by the necessity or exigency of his employment. Territory supervisors, like traveling salesmen, were expected to operate automobiles and injury through collision is a risk of highway travel, but Mr. Schmucker's employment did not expose the plaintiff or anyone else to the hazard. Compare: Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S.W.2d 128; Thompson v. Aultman & Taylor Mach. Co., supra, and Ruff v. Farley Machine Works Co., supra. The only reasonably permissible inference is that the journey from Kansas City to Oklahoma City would not have been made except for reasons and purposes strictly personal to Mr. and Mrs. Schmucker. Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181.

In determining the question we are not unmindful of the fact that agency and hence its resultant consequences need not be shown by so-called "direct evidence" but may be established circumstantially. Hubbard v. Lock Joint Pipe Co., D.C., 70 F.Supp. 589. Neither are we unmindful of the duty of viewing the evidence most favorably to Miss Hopkins. State ex rel. Stiers Bros. Const. Co. v. Hughes, 354 Mo. 659, 190 S.W.2d 880. And in this connection it may be noted that Miss Hopkins had the advantage, because he was said to be "the representative" of the company at the trial, of calling as a witness the office manager and subjecting him to an unrestrained cross-examination. In addition, she had the favorable circumstance of a defendant administratrix who in her personal right had a claim for workmen's compensation benefits against the Case Company for her husband's death. Nevertheless, the only permissible inference upon the record is that Mr. Schmucker was not acting in the course and scope of his employment, when he negligently injured Miss Hopkins and the trial court appropriately decreed the fact as a matter of law. 57 C.J.S., Master and Servant, § 617, p. 408; Schide v. Gottschick, supra; Mullally v. Langenberg Bros. Grain Co., supra. Accordingly, the judgment is affirmed.

All concur.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.