BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1925.

---

JESSE T. CHAPMAN, Respondent, v. MISSOURI PA-
CIFIC RAILROAD COMPANY, Appellant.*

In the Springfield Court of Appeals, March 6, 1925.

1. **NEGLIGENCE:** Automobile Guest not Chargeable with Driver's Neg-
ligence. Plaintiff, a guest in an automobile, was not required to use
the same vigilance as required of the driver, and was not charge-
able with the driver's negligence.

2. **RAILROADS:** Negligence: Automobile Guest: Care Required of
Guest Stated. Automobile guest is required to use that degree of
care in looking for danger that an ordinarily prudent person would
use under similar circumstances.

3. ———: ———: ———: Contributory Negligence of Guest, when a
defense. Action by guest in automobile for personal injuries, result
of railroad crossing accident. Defense of contributory negligence.
*Held,* in order for plaintiff's contributory negligence to defeat re-
covery, such negligence must have formed the direct producing and
efficient cause of the collision, and absent which the collision would
not have happened.

4. ———: ———: ———: Negligence of Automobile Guest Held for
Jury. In action by guest in automobile for injuries arising from
railroad crossing collision, whether plaintiff was negligent *held*
question for jury.

(312)

5. ———: Railroad Crossings: Automobiles: Engine Crew Had no Right to Assume Automobile Driver Would Stop. Where automobile in which plaintiff was riding was in plain view of those in cab of approaching engine, was on engineer's side of engine, and could have been seen by those in charge of engine by exercise of ordinary care, and automobile did not slow down, in such case those in charge of the engine had no right to assume that the driver would stop before going upon the track, so as to excuse them from giving any warning whistle or ringing bell; evidence being that the automobile could have been stopped almost instantly.

6. ———: Humanitarian Doctrine: May be Sufficiently Based on Failure to Stop or Give Warning. It is not always necessary to show that a train could have been stopped by those in charge by the exercise of ordinary care in order to invoke the humanitarian doctrine: a failure to stop, slow down, or warn by bell or whistle may be sufficient to invoke it, depending on the facts of the case.

7. ———: Evidence Held for Jury Under Humanitarian Doctrine. In automobile guest's action for injuries when struck by train, evidence *held* to make a case for jury under humanitarian doctrine.

8. TRIAL PRACTICE: Instruction Held Erroneous, Where not Setting Out Acts of Negligence Relied on, but Referring Jury to Petition. Instruction which told jury to find for plaintiff if they found his injuries were direct result of negligence of defendant "as described in the petition," and did not set out the acts of negligence on which plaintiff relied, simply referring jury to petition, *held* erroneous, there being several acts of negligence alleged in the petition, and no evidence at all to support some of them.

9. ———: Instruction Held Confusing, Where Referring to Nonexisting Instruction for Definition of Contributory Negligence. Instruction authorizing finding for plaintiff, in action for injuries sustained in railroad crossing collision, unless jury should find plaintiff was guilty of contributory negligence which caused the injuries, "as such contributory negligence is defined in other instructions in this case," and there was no instruction defining contributory negligence, instruction *held* confusing.

10. DAMAGES: Infants: Instruction Held Erroneous Where Allowing Infant Plaintiff Damages for Loss of Earning Power Through Injuries, where no Evidence of Emancipation. In action by infant plaintiff for injuries sustained in railroad crossing collision, instruction which told jury that in fixing damages they might consider extent to which plaintiff had been prevented and disabled by reason of such injuries from working and earning a living for himself, *held*

erroneous, where there was no evidence that plaintiff had been emancipated, and therefore no showing made that he was entitled to his earnings prior to attaining his majority.

11. **RAILROADS: Instruction on Humanitarian Doctrine Held not Erroneous for Failure to Make Reference to Safety of Passengers.** In action for personal injuries sustained in railroad crossing collision, instruction submitting humanitarian doctrine held not erroneous because it made no reference to the safety of passengers, the instruction being predicated on alleged failure to give warning of approach of train "by sounding the whistle or ringing the bell," and making no reference to slowing down or stopping the train in time to have avoided the injury; the failure to make reference to safety of passengers being immaterial, since their safety could not have been endangered by sounding the bell or blowing the whistle.

12. **TRIAL PRACTICE: Counsel, in Argument, Should Stay Within Record.** In argument, it is the duty of counsel to stay within the record, and not go out on excursions of doubtful propriety.

*Headnotes 1. Negligence, 29 Cyc., pp. 550, 551; 2. Negligence, 29 · Cyc., p. 551; 3. Railroads, 33 Cyc., p. 987; 4. Railroads, 33 Cyc., p. 1121; 5. Railroads, 33 Cyc., p. 980; 6. Railroads, 33 Cyc, p. 978; 7. Railroads, 33 Cyc., p. 1129; 8. Trial, 38 Cyc., p. 1608; 9. Trial, 38 Cyc., p. 1602; 10. Infants, 31 C. J,. Section 252; 11. Railroads, 33 Cyc., p. 1140; 12. Trial, 38 Cyc., p. 1479.

Appeal from the Circuit Court of Mississippi County.— *Hon. Charles A. Killian*, Special Judge.

REVERSED AND REMANDED.

*James F. Green*, of St. Louis, and *W. C. Russell*, of Charleston, for appellant.

(1) The respondent was guilty of contributory negligence as a matter of law, and was not entitled to go to the jury under the "humanitarian doctrine." Therefore, appellant's demurrers, timely offered, should have been sustained. Nichols v. Railroad Co., 250 S. W. 627; Henderson v. Railroad Co., 248 S. W. 987; State ex rel. Hines v. Bland, 237 S. W. 1018; Holtcamp v. Railroad Co., 234 S. W. 1054; Evans v. Railroad Co., 233 S. W. 397; Mor-

row v. Hines, 233 S. W. 493; Grocery Co. v. Railroad Co.,
238 S. W. 514. (2) There are several acts of negligence
charged in the petition, none of which were proven, and
it was error for the court to give plaintiff's instruction
No. 2, which told the jury: "That if they found that said
injuries so inflicted were the direct result of the negli-
gence of the defendant, as described in the petition, your
verdict should be for the plaintiff, unless you believe
and find from the evidence that plaintiff was guilty of con-
tributory negligence, which caused the injuries, as such
contributory negligence is defined in other instructions
in this case." This instruction permitted the jury to
pick out the acts described in the petition, whether prov-
en or not, and return a verdict accordingly. Furthermore,
the court never gave any instruction defining "contrib-
utory negligence." Fleishmann v. Miller, 38 Mo. App.
177; Fisher v. Transit Company, 198 Mo. 562; Kohr v.
Metropolitan, 117 Mo. App. 302; Jaffi v. Railway Co., 205
Mo. 450, 472. (3) The automobile in which respondent
was riding was traveling very slowly toward the railroad
track, and if appellant's engineer saw it, he had the right
to presume it would stop without the danger line, and
the court should have so instructed the jury by giving
defendant's instruction No. 3. Reno v. Railway Co.,
180 Mo. 469; Roenfeldt v. Railway Co., 180 Mo. 566;
McGee v. Railway Co., 153 Mo. App. 498; Schall v. United
Ry. Co., 212 S. W. 890; Boyd v. Railway Co., 105 Mo.
371. (4) The court should not have submitted the case
to the jury under the "Humanitarian" or "Last Clear
Chance" doctrine. Alexander v. Railroad Co., 233 S.
W. 47; Hall v. Railroad, 240 S. W. 175; Sorrell v. Payne,
247 S. W. 462; Haley v. Railroad, 197 Mo. 25; Coby v.
Railroad, 174 Mo. App. 648; Tannehill v. Railroad, 279
Mo. 158; Beal v. Railway Co., 256 S. W. 733; Betz v. Rail-
way Co., 253 S. W. 1094; Banks v. Morris, 257 S. W. 482.
(5) The respondent in this case was a minor, and his
parents were entitled, as a matter of law, to his earnings
until he attained his majority, and it was error for the

court to include his loss of earnings as an element of damage in the instructions given on the measure of damages. Buck v. Power Co., 46 Mo. App. 555; Thomas v. Railway Co., 180 S. W. 1030; Yates v. Brown, 218 S. W. 897. (6) Plaintiff's instruction No. 5, does not correctly state the Humanitarian Doctrine. It disregards the safety of the passengers on the train, and tells the jury that plaintiff was entitled to recover if the defendant's servants did not sound the whistle or ring the bell, neither of which would have any tendency whatever to check the speed of the train. Banks v. Morris, supra. (7) The plaintiff was only confined to his bed ten or twelve days, and only paid out $56 for doctor's bill, and a $54 board bill, making a total of $110. There is no evidence of any permanent injury except the statement of the plaintiff that he suffers from pains in his back. Appellant submits that $2390 is very excessive, when no physician testified that his injuries were permanent. Dr. Nichols said he could not say without examination that the pain complained of, occurring after eighteen months, was caused by the hurt. Dr. Malcolm never made any examination. He says under certain conditions you might look for certain things, but does not state that the plaintiff has any permanent injury.

J. M. Haw and James A. Boone, both of Charleston, for respondent.

(1) Respondent was not guilty of contributory negligence as a matter of law, nor as a matter of fact. He was the guest of Springer, the owner and driver of the car, who was sitting on the side of the car from which the train was approaching (Abs. pp. 10 and 32). Respondent looked to see if any train was approaching from his side, but could not see on Springer's side, the latter being between him and the isinglass (Abs. p. 41). If the driver was negligent, his negligence could not be imputed to respondent. Stotler v. Railroad, 200 Mo. 107,

143-148; Byars v. Railroad, 161 Mo. App. 692, 704; Marsh v. Railroad, 104 Mo. App. 577, 586. (2) If instruction No. 2, given in behalf of plaintiff is not artistically drawn or as clear as it should be, any inaccuracy or defect therein is cured by other instructions in the case. Instructions 3 and 5, for plaintiff, clearly define the issues on which the case was decided and instructions No. 4, given for defendant, is broad enough and definite enough to define the issues. Muehlebach v. Muehlebach Brewing Co., 242 S. W. 174, 178; Bleish v. Rhodes, 242 S. W. 971, 973; Tranbarger v. Railroad, 250 Mo. 46, 58. Defendant's instruction No. 4 submitted the case on the issue as to whether plaintiff's injury was caused by "any negligence of the employees in charge of defendant's train" and defendant cannot be heard to complain, because respondent's instruction No. 2 is similarly worded, in fact confines the issues within narrower bounds. Bettoki v. Northwestern Coal & Mining Co., 180 S. W. 1021; Moore v. McHaney, 178 S. W. 258, 191 Mo. App. 686; Holman v. City of Macon, 177 S. W. 1078; Joggard v. Metropolitan St. Ry. Co., 174 S. W. 371, 264 Mo. 142, 146-7; Tranbarger v. Chicago & A. R. Co., 250 Mo. 46, 58. (3) It is needless to cite authorities to sustain the refusal of appellant's instruction No. 3. It totally ignores the humanitarian rule. The cases cited under point 4 herein abundantly show that it was not error to refuse this instruction. (4) The case was properly submitted to the jury under the "humanitarian" or "last clear chance" doctrine. State ex rel. v. Trimble et al., 260 S. W. 1000; Andrews v. Parker, 259 S. W. 807; Sullivan v. Gideon & N. I. R. Co., 247 S. W. 1010; Gilbert v. Mississippi R. & B. T. R. Co., 226 S. W. 263; Wagner v. Pryor et al., 222 S. W. 857. (5) It was not error for the court to include respondent's loss of earnings in the instruction given on the measure of damages. The father is a party to the suit as next friend for respondent and as such is asking for a recovery for the son. He could not then sue appellant for them in his own behalf. Besides, the evidence

shows that the boy was supporting his parents (Abs. p. 29). The parent's rights to the earnings of his minor son are not absolute but contingent upon his actually providing support for the infant and retaining parental control over him. Evans v. Kansas City Bridge Co., 247 S. W. 213. A minor has a right to include the value of his earnings as an element of damages. Stotler v. Railroad, 200 M. 144-142; Wagner v. Construction Co., 220 S. W. 897, 898. (6) Appellant cannot complain of respondent's instruction No. 5 (Abs. pp. 45-46). It is much milder than the usual approved form. It specifically restricts the negligence for which defendant could be held responsible to a failure "to use ordinary care, with means at hand to have avoided the injury to plaintiff, by sounding the whistle or ringing the bell." It is a matter of common knowledge, of which the court will take judicial notice, that merely sounding the whistle or ringing the bell of a passenger train can, under no circumstances, imperil "the safety of the passengers on the train." (7) Respondent was rolled under the automobile, in front of the train, about seventy-eight feet. He had several wounds on his head (Abs. pp. 21 and 31); abrasions in several places (Abs. p. 22); broken ribs (Abs, p. 31); impaired physical condition after returning to school (Abs. p. 26); and apparently permanent injury to back and spine (Abs. pp. 28 and 31). The amount of the judgment is far from excessive, in fact, it is meager. Banks v. Morris & Co., 257 S. W. 482, 486; Muehlebach v. Muehlebach Brewing Co., 242 S. W. 174, 179; Stotler v. Railroad, 200 Mo. 142 and 148. (8) The question of negligence was one for the jury and its finding is binding on the court. Gilbert v. Mississippi River & B. T. R. Co., 226 S. W. 263; Maginnis v. Mo. Pac. Ry., 268 Mo. 667, 187 S. W. 1165; Lindsay v. Sonora Gold Min. and Mill. Co., 196 S. W. 764; St. Louis Police Relief Assn. v. Bonding Co., 196 S. W. 1148, 1152. The statute required defendant to continuously sound the whistle or ring the bell when approaching crossings. R. S. 1919,

sec. 9943. The jury having found that this duty was not performed the burden was on the defendant to show that the failure to sound the whistle or ring the bell was not the cause of the injury. Monroe v. Chicago & A. R. Co. et al., 219 S. W. 68, 280 Mo. 483; McGee v. Railway, 214 Mo. 530. Defendant's failure to call as witnesses the engineer and firemen who were on the engine at the time of the collision amounts to a practical admission of negligence on the part of defendant. Plaintiff had a right to urge this on the jury as a strong circumstance against defendant. State v. Linders, 253 S. W. 716; McCord v. Schoff, 216 S. W. 320, 321, 279 Mo. 558; State ex rel. Trimble, 260 S. W. 1000, 1003-4; Reyburn v. Railroad, 187 Mo. 565, 575; McClanahan v. Railroad, 147 Mo. App. 386, 410. (9) The record shows no error materially affecting the merits of the case and the cause should be affirmed. R. S. 1919, sec. 1513; Lessenden v. Mo. Pac. Ry. Co., 238 Mo. 247; Shuin v. United Ry. Co., 248 Mo. 173; Read v. Mo. Pac. Ry. Co., 161 Mo. App. 522; Frank v. K. C. Southern Ry. Co., 161 Mo. App. 314; Lower v. Marceline Coat & M. Co., 142 Mo. App. 351.

BRADLEY, J.—Plaintiff, a minor, sued by next friend, to recover for injuries received in a crossing collision in the village of Diehlstadt in Scott county. The cause was tried before the court and a jury. Plaintiff recovered a judgment for $2500, and defendant appealed.

The first charge of negligence in the petition is general. Then follows charges of negligence predicated upon (1) a failure to keep a lookout, (2) running at an unusual and reckless rate of speed, (3) the humanitarian doctrine, (4) failure to give the statutory signals, and (5) defective appliances. The answer is a general denial and a plea of contributory negligence. The reply is a general denial.

Defendant assigns error on the refusal of its demurrer at the close of the case, on the instructions, on the argument of counsel, and on the amount of the verdict.

Defendant's railroad runs through Diehlstadt somewhat northwest and southeast, but for present purposes we may say that it runs north and south. The crossing in question is a short distance north of a barber shop on the east side of the track. There is also a switch track on the east side of the main track, and this switch track is about twenty-five feet from the main track. Plaintiff attended the high school in Diehlstadt and worked in the barber shop after school. On March 1, 1923, the day plaintiff was injured, he contemplated going to Charleston with H. E. Springer and in Springer's automobile. Springer had driven to the barber shop for plaintiff, and had his automobile headed north in front of the barber shop when plaintiff got in. The curtains on the car were up, and vision through the isinglass windows was obscured because of mud thereon, but vision through the windshield was not obscured. Defendant's track south from the crossing is straight and level, and there is nothing to obstruct the vision of those in charge of a train when approaching this crossing, and likewise nothing to obstruct the vision of one in an automobile ap- proaching the crossing. When plaintiff got in the automobile the train was then approaching from the south and not far from the station which was about 150 feet south of this crossing. Plaintiff sat beside Springer, and Springer drove in low north to the crossing, and as he turned west, and about the time he struck the switch track, he shifted to second, and drove the remaining twenty or twenty-five feet, and upon the crossing at about six miles per hour. Plaintiff looked north as the crossing was approached, but did not look south, because Springer was in his way while shifting gear. Plaintiff was not certain that he looked south for a train when he got into the automobile. Plaintiff's evidence showed that there were no signals given except the station whistle some distance south. Plaintiff and Springer heard no signals. The train approached the crossing at about fifteen miles per hour, and struck and carried the auto-

mibile a distance of seventy-eight feet from the crossing, and caused the injuries complained of.   There was evidence that the automobile, at the rate of speed it was moving when approaching this crossing, could have been stopped almost instantly.

Defendant's demurrer is bottomed upon the contention that plaintiff as a matter of law was guilty of contributory negligence, and that under the facts the humanitarian doctrine cannot be invoked.   The automobile when plaintiff got in was standing in the street in front of plaintiff's barber shop.   When plaintiff came out of the barber shop and locked the door thereof the train was approaching and could have been seen by plaintiff had he looked.   We say this because other witnesses in no more favorable position saw the train at this time.   After plaintiff got into the automobile and from that point to the turn west at the crossing he could not have seen the approaching train unless he had turned in his seat and looked back south, and then his vision would have depended upon the character of window in the rear, and that is not shown.   He looked north when the turn was made, and did not look south, according to his evidence, because of Springer's shifting gear and thereby leaning in front of him.   If plaintiff was guilty of contributory negligence it was because (1) of his failure to look south for the train after he came out of the barber shop and before he got into the automobile; (2) or because he did not turn and look back south after he got into the automobile and while going from that point north to the crossing; (3) or because he did not look south after the turn, and while approaching the track between the switch track and the main track.

Plaintiff was a guest in the automobile and was not required to use the same vigilance as required of the driver, and was not chargeable with the driver's negligence.   [Corn v. Railroad, 228 S. W. (Mo. Sup.) 78; Betz v. Railroad, 253 S. W. (Mo. App.) l. c. 1093; Boyd v. Railroad, 237, S. W. (Mo. Sup.) 1001, l. c. 1008.]   We

said in the Betz Case that a guest or a passenger in an automobile is not under the same obligation to look for danger as is the driver. He is required to use that degree of care that an ordinarily prudent person would use under similar circumstances. In Burton v. Pryor, 198 S. W. (Mo. App.) 1117, the vehicle was a buggy, but the law applicable to the care required of a guest as stated there is in point here. There the court said: "Although plaintiff was in the buggy as a guest or by favor, yet he was still called upon to exercise all the care which ordinary caution required of him under the circumstances. If in the exercise of common prudence he knew or should have known of the danger and that the driver was apparently taking no cognizance of it, or was taking no precautions in regard thereto, it was plaintiff's duty to warn him, or call his attention to it in some way. He could not negligently abandon the exercise of his own faculties and, without taking any precautions of his own or making any effort whatever, resign himself absolutely to the driver's care regardless of the visible lack of ordinary caution on the latter's part, and relieve himself of the consequence of his own negligence by hiding behind the fact that the other man was driving. [Schultz v. Old Colony Street Railway, 193 Miss. 309, 323, 79 N. E. 873, 8 L. R. A. (N. S.) 597, 118 Am. St. Rep. 502, 9 Ann. Cas. 402.]"

In order for plaintiff's contributory negligence to defeat recovery such negligence must have formed the direct producing and efficient cause of the collision, and absent which the collision would not have happened. [Conrad v. Hamra, 253 S. W. (Mo. App.) l. c. 811, and cases there cited.] We are of the opinion that plaintiff's negligence, under the facts at bar, was a question for the jury.

Do the facts justify the submission on the humanitarian doctrine? The automobile in which plaintiff was riding was in plain view of one in the engine cab of the approaching train from the time it started after plain-

tiff got in, and could have been seen by those in charge of the engine by the exercise of ordinary care, and especially by the engineer as the automobile was on the engineer's side. When the automobile turned west such fact evidenced an intention on the part of the driver to cross the track. The switch track was about twenty-five feet from the main track, and about the time the automobile went over the switch track the driver, Springer, shifted from low to second. If those in charge of the engine had been exercising the care required they would have seen that this automobile was approaching this track with no indication of slowing down, and in such case they had no right to assume that the driver would stop before going upon the track. In Logan v. Railroad, 300 Mo. 611, 254 S. W. 705, the court in considering a crossing case and the duty of those in charge of an engine used this language: "The evidence tending to show that the engineer and fireman, had they looked with due diligence, might have seen the deceased approaching the crossing in a perilous position, they had no right to assume he would stop before a collision took place, but were in duty bound to give him an emergency whistle or apply the emergency brake to slacken or stop the train, or both, if they could have done so by the exercise of due care. Consequently, plaintiff had a case for the jury under the humanity doctrine." In the Logan Case the train was moving between fifteen and twenty-five miles per hour, and the automobile from four to five miles per hour. There was a slight incline up which the automobile was going and such is the fact in the case at bar. The automobile in the Logan Case could have been stopped within three to five feet. In the case at bar the evidence shows the automobile could have been stopped almost instantly. Had any bell or whistle been sounded when it must have been apparent that the driver of the automobile in which plaintiff was riding did not intend to stop, the automobile could have been stopped and the collision averted. But according to all the evi-

dence there was no whistle sounded except possibly at a considerable distance south of the station, and the bell was not rung at all.

Defendant is presenting its argument to support the contention that there is no room under the facts for the humanitarian doctrine proceeds, it would seem, on the theory, that unless there was evidence that the train, by the exercise of ordinary care by those in charge, could have been *stopped* in time to have avoided injuring plaintiff, then the humanitarian doctrine may not be invoked. It is not always necessary to show that the train could have been *stopped* by those in charge by the exercise of ordinary care in order to invoke the humanitarian doctrine. A failure to stop, slow down or warn by bell or whistle may be sufficient to invoke the doctrine. Such of course, depends upon the facts of each particular case. Here plaintiff seeks to invoke the doctrine because defendant failed to sound the whistle or ring the bell to warn him and Springer of their peril after the automobile turned west and started towards this crossing. We are of the opinion that it was proper to submit the cause under the humanitarian doctrine. [See, also, State ex rel. Wabash, etc., v. Trimble et al., 260 S. W. (Mo. Sup.) 1000.] The demurrer was properly refused.

Plaintiff's instruction No. 2 as numbered in the record tells the jury to find for plaintiff if they find that his injuries were the direct result of the negligence of defendant "as described in the petition" unless it was found that plaintiff was guilty of contributory negligence "as such contributory negligence is defined in other instructions in this case." This instruction does not set out the acts of negligence on which plaintiff relies, but refers the jury to the petition. Such an instruction has been uniformly held to constitute error. [Boomshaft v. Klauber, 196 Mo. App. 22, 190 S. W. 616; State ex rel. Macke v. Randolph, 186 S. W. (Mo. App.) 590.] Several acts of negligence are alleged in the petition,

and there was no evidence at all to support some of these. There was no instruction defining contributory negligence hence the reference to definition of contributory negligence in plaintiff's instruction absent a definition would tend to confuse. The instruction on the elements of damage was also embraced in No 2. Therein appears this: "The extent, if any, to which he has been prevented and disabled by reason of such injuries from working and earning a livelihood for himself." There is no evidence that plaintiff had been emancipated and in such case he would not in law be entitled to his earnings prior to attaining his majority. If plaintiff's injuries are of such character as to impair his earning power after reaching his majority or if he has been emancipated, then such would be a proper element of damage otherwise it would not be.

Plaintiff submitted his cause in separate instructions on the alleged failure to give the statutory signals and on the humanitarian doctrine. No complaint is lodged against the instruction predicated on the alleged failure to give the statutory signals. The instruction on the humanitarian doctrine is challenged because it omits reference to the safety of the passengers. Plaintiff's instruction is predicated on the alleged failure to warn "by sounding the whistle or ringing the bell." No reference is made in the instruction to slowing down or stopping the train in time to have avoided the injury as is frequently the case in instructions submitting the humanitarian doctrine. Such being the case no reference to safety of equipment and passengers was necessary, because such would not have been endangered by sounding the bell or blowing the whistle.

Defendant complains of the character of argument of counsel for plaintiff, and of the amount of the verdict. As to the argument complained of we think it sufficient to say that it is the duty of counsel to stay within the record, and not go out on excursions of doubtful propriety. Since a new trial is to be had it is not necessary

to rule on the assignment based on the alleged excessive verdict.

The judgment should be reversed and the cause remanded, and it is so ordered. *Cox, P. J.,* concurs. *Bailey, J.,* not sitting.