LARRY F. GROSVENER, Appellant, v. NEW YORK CENTRAL RAILROAD COMPANY, a Corporation.—123 S. W. (2d) 173.

Division Two, December 20, 1938*

*NOTE: Opinion filed at May Term, 1938, August 17, 1938; motion for rehearing filed; motion overruled at September Term, December 20, 1938.

*C. O. Inman* for appellant.

614

*Wilton D. Chapman* for respondent.

616

BOHLING, C.—Larry F. Grosvener instituted this action against the New York Central Railroad Company, a corporation, seeking a judgment of $60,000 for personal injuries under the Federal Employers' Liability Act (35 Stat., pp. 65, 66, 45 U. S. C. A., p. 92 et seq.). He obtained a verdict and judgment for $4000 and prosecutes this appeal, asserting reversible error in the refusal and giving of instructions and the inadequacy of the verdict.

Plaintiff was injured on August 29, 1935, while engaged in the performance of his duty as a member of one of defendant's switching crews in defendant's yard at East St. Louis, Illinois. We have experienced some difficulty in visualizing the switch tracks, with their connections, from the record, but think the following is substantially correct. The yard had two main lead tracks, known as the north and south leads, with a total of thirty-five tracks branching off from these two leads. We understand the north lead, commencing in the eastern portion of the yard, runs from the north to the south, extending practically north and south at a viaduct (estimated by plaintiff to be approximately 500 feet east of where he was injured), and then curves to the right or west. At the place where plaintiff was injured the switch tracks extended practically east and west. The northernmost track was known as No. 5 lead; thence south in the order named, the north lead; the south lead; the caboose track; the coal dock track and the engine roundhouse lead. Track No. 29 came off the south lead at a point west of where plaintiff was injured and was between the north and south leads. Track No. 3 came off of No. 5 lead west of where plaintiff was injured and was north of the north lead.

At the time plaintiff was injured two switch crews were working in the yard; each engine being headed west with the engineer on the right hand side of the cab. Plaintiff's crew was engaged in switching a caboose on track No. 29 to third position on the caboose track; and the movement required the engine to move in (west) on the caboose track, couple onto two cabooses, back out and cross over to the south lead and then move forward (west) onto track No. 29 to pick up said caboose and then place it in third position on the caboose track. Plaintiff was to line the switches for said movements. The other crew was engaged in switching a cut of twelve cars from track No. 3 to the western portion of the yard; and the movement required the engine to couple onto said cut of cars, back out over track No. 3 onto No. 5 lead and thence to the crossover between No. 5 lead and the north lead and then shove said cars west on the north lead, past where plaintiff was working, to the western portion of the yard.

Plaintiff testified that, after he had lined the switch for his engine to move west on the caboose track, he looked in both directions, saw no cars coming from the east, walked across the tracks and took a position between the north and south leads, closer to the north lead and in the clear of the path of his engine when it would back out, in order to signal his engineer; that, while standing there, his attention was attracted by the ringing of an engine bell on track No. 3, four or five car lengths west of where he was standing; that said engine backed east on track No. 3 with a cut of twelve cars, the westernmost car being a refrigerator car, and onto No. 5 lead, "passed me and backed onto the north lead and backed over the switch," which switch, we understand, was about 140 to 160 feet east of plaintiff; that the engine bell was shut off after the movement started and before the engine passed him; that he did not know what said crew was going to do and paid no attention to them; that he faced west watching his crew; that after assuming said position he stayed there two or three minutes looking only in the one direction; that said cut of cars moved westward over said north lead; that the engine bell was not sounded at the start of said western movement; that the corner of the refrigerator car struck him, knocked him down, ran over his left leg, necessitating its amputation about nine inches below the knee, fractured his hip, hurt his spine and inflicted cuts and bruises on his body.

Plaintiff had been an employee of defendant at said yard for approximately nine years. He testified that under the uniform custom and practice in said yard, of which he had knowledge and upon which he relied, the engine bell should have been rung before starting said western movement, and offered in evidence defendant's rule 30, read-

ing: "The engine bell must be rung when an engine is about to be moved and when approaching and passing public crossings."

The applicability of said rule to the movement in question and the existence of said custom and practice was denied by a number of witnesses offered by defendant, some of whom testified to the effect that the rule and custom referred to the first movement of the engine (the eastern movement here involved) and did not refer to each subsequent movement effecting the switching of cars, as such practice would create confusion in the yard.

Defendant offered in evidence certain of its rules, which, as we read plaintiff's testimony, plaintiff admitted it was his duty to obey. They read:

"Employees must look in each direction before stepping upon, crossing or standing too close to tracks."

"They must avoid standing or walking on the tracks except when necessary in the performance of duty; face the current of traffic where possible, looking out for trains in each direction, as trains may move on any track in either direction without notice."

"Employees must be on the lookout for their own safety and must not depend upon foremen or other persons to warn them of approach of trains or cars. In places where clear view cannot be obtained, extra precaution must be taken."

Defendant's testimony was to the following effect: The engine coupled onto the cut of cars moved eastwardly to a point between 600 and 800 feet east of plaintiff, somewhere in the vicinity of the viaduct. No warning by bell, whistle or otherwise was given of the start of the westwardly movement over the north lead. The engineer could look across the curve of the tracks and see plaintiff but could not tell whether plaintiff was in the clear of the overhang of the cars. As the cars moved westwardly, plaintiff being south of the north lead, they would eventually obstruct the engineer's view of plaintiff. It never occurred to the engineer that plaintiff was in the way. The distance between the north and south leads was 13 feet, 4 inches, center to center, and 7 feet, 10½ inches, track to track. A refrigerator car overhangs the rails 22 inches and a step would have placed plaintiff in the clear. The cut of cars was moving between six to eight miles an hour and could be stopped in two car lengths—the length of a car being forty feet. John J. Franey testified that he was a member of the crew switching the cut of cars; that he was about 140 feet east of plaintiff, north of the north lead, and at the switch; that when he closed the switch, he saw plaintiff in the south lead, facing him, and gave his engineer the signal to come ahead; that plaintiff was in the clear when he last saw him; that the cars shoved past him and he got on the north side of the fourth car; and that he

observed no indication on the part of plaintiff that he was going into a place of danger.

Section 3 of the Federal Employers' Liability Act (35 Stat. 66, 45 U. S. C. A., p. 379, sec. 53) provides in part that: ". . . . the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. . . ." Plaintiff's instruction on the measure of damages authorized the jury to so diminish the damages in the event of a verdict for plaintiff. Notwithstanding the verdict in his favor plaintiff says, speaking generally, that if defendant's instructions unjustifiably magnified any misconduct of plaintiff or minimized the misconduct of defendant, they were erroneous in that they permitted of an unlawful diminution of plaintiff's damages. Defendant does not question the position taken.

I. Defendant, maintaining no error was committed in the giving and refusing of instructions, insists its demurrer at the close of all the evidence should have been sustained, and, as plaintiff failed to make a submissible case, plaintiff was not prejudiced by the inadequacy, if any, of the verdict in his favor or error, if any, in the giving and refusing of instructions. Defendant invokes the rule of law to the effect, broadly stated, that yard employees must look out for their own safety and that switching crews making yard movements are ordinarily under no duty to watch out for the safety of and warn yard employees, unless they know of their presence and danger. Illustrative of the cases cited are: Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758; Martin v. Wabash Ry. Co., 325 Mo. 1107, 1131, 30 S. W. (2d) 735, 746 (7-9), Goodwin v. Missouri Pac. Railroad Co., 335 Mo. 398, 407, 72 S. W. (2d) 988, 991(2); Hoch v. St. Louis-S. F. Ry. Co., 315 Mo. 1199, 1208, 287 S. W. 1047, 1050(2). The instant case, however, falls within an exception to said rule of law in that, under plaintiff's evidence, it involved the violation of a rule or custom of defendant which required the ringing of the engine bell when the engine was about to move; and defendant's position is not sustainable because the jury might find, under the conflicting evidence, that plaintiff relied upon the observance of defendant's said rule and custom; that defendant was negligent in failing to ring said bell before moving the cut of cars westwardly, and that such negligence directly contributed to plaintiff's injuries. [Gildner v. Baltimore & O. Railroad Co. (C. C. A.), 90 Fed. (2d) 635, 636(1-3); Wyatt v. New York, O. & W. Railroad Co. (C. C. A.), 45 Fed. (2d) 705, 707(3); Pacheco v. New York, N. H. & H. Railroad Co. (C. C. A.), 15 Fed. (2d) 467(1); Derrington v. Southern Ry. Co., 328 Mo. 283, 292, 40 S. W. (2d) 1069,

1072(4), certiorari denied, 284 U. S. 662, 52 Sup. Ct. 37, 76 L. Ed. 561; Brock v. Mobile & O. Railroad Co., 330 Mo. 918, 934(8), 939(9), 51 S. W. (2d) 100, 106(13), 109(14), certiorari denied, 287 U. S. 638, 53 Sup. Ct. 87, 77 L. Ed. 552.] The uncontradicted evidence in the Hoch case, supra, l. c. 1213 and 1053, respectively, established "that it was not the practice and custom in said yard, during the period of deceased's employment, for the engine bell to be rung in the performance of such switching operations;" and the Martin case, supra, l. c. 1136 and 749(11), was remanded, rather than reversed outright, that plaintiff might have an opportunity to bring her case within an exception to the general rule relieving railroads from certain duties and obligations with respect to yard employees by pleading and establishing a rule, custom or practice, if any applicable, existing for the protection of yard employees, plaintiff not having pleaded but having offered to prove an applicable local usage and custom.

II. Separate instructions (Nos. 9, 10 and 11) were given on behalf of defendant covering each of the rules offered in evidence by defendant. Each instruction informed the jury that a given rule (quoted in the instruction) was in force and effect at the time of plaintiff's injury, and continued: "And if you further find and believe from the evidence that plaintiff did not obey said rule and that such conduct on his part was negligence, and that such negligence, if you so find, contributed to cause plaintiff being struck and injured, if you so find, then you should take such contributory negligence, if any, into consideration in arriving at your verdict, as otherwise defined in these instructions."

A common complaint lodged against each of said instructions is that the instruction failed to hypothesize any facts shown in evidence constituting a failure on the part of plaintiff to obey the rule instructed upon. The instructions are within the allegations of defendant's answer, which charged plaintiff, in general terms, with contributory negligence in violating each of said rules. The evidence, however, did not take such a broad scope. For instance (without attempting to cover all acts or omissions within the purview of the given rules): As we read the record there was no substantial evidence establishing any act or omission constituting contributory negligence on the part of plaintiff at the time of his injury with reference to plaintiff's "stepping upon" or "crossing" (within one of said rules); or "standing" or "walking" (within another of said rules) on defendant's tracks, or that plaintiff could not obtain a "clear view" (within the other of said rules). The individual instructions limited the jury to a consideration of matter within the quoted rule but the whole of the rule was not applicable under the

established facts, resulting in each of said instructions embracing facts and circumstances not proved. To that extent each individual instruction was broader than the evidence and under the record erroneous. McIntyre v. St. Louis-S. F. Ry. Co., 286 Mo. 234, 259 (VI), 227 S. W. 1047, 1055(15). Consult also Schide v. Gottschick, 329 Mo. 64, 71, 43 S. W. (2d) 777, 779(3); Clason v. Lenz, 332 Mo. 1113, 1120(4), 61 S. W. (2d) 727, 730(6, 7); Harrington v. Dunham, 273 Mo. 414, 428(6), 202 S. W. 1066, 1069(6).

We think said rules are entitled to an interpretation and application not contravening Section 5 of the Federal Employers' Liability Act (45 U. S. C. A., p. 506, sec. 55), prohibiting contracts, rules, etc., exempting common carriers from any liability created by the act; and that defendant, under that portion of the conflicting evidence favorable to it, was entitled to the benefit of the applicable provisions of said rules.

Certain points presented in connection with the foregoing instructions are stressed by plaintiff in discussing other instructions and are to be taken as considered in our discussion of said instructions.

III. The verdict for plaintiff indicates the jury did not find the facts hypothesized in defendant's instructions dispositive of the case in defendant's favor, and a discussion of said instructions might be dispensed with were it not for the necessity of a retrial. Any discussion of defendant's instructions involves the conflicting testimony in the case, as defendant was entitled to instructions embodying the applicable law within the issues made and proved.

a. Instruction No. 4, while exacting of plaintiff the exercise of "ordinary care" for his own safety, predicated, in general terms, nonnegligence on the part of defendant upon a finding that the cut of cars was being moved in accordance with the usual practices and customs prevailing in defendant's said yard. The standard established by the instruction for exonerating defendant was defendant's "usual practices and customs." The issue of negligence *vel non* is ruled by the applicable principles of law rather than the usual practices and customs of individual defenses. The issue is well within the observations of Mr. Justice HOLMES in Texas & Pac. Ry. Co. v. Behymer, 189 U. S. 468, 470, 47 L. Ed. 905, 906, 23 Sup. Ct. 622, 623, affirming 112 Fed. 35: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." [Consult: Illinois Cent. Railroad Co. v. Porter, 207 Fed. 311, 314(2).]

b. Instruction No. 5, on the burden of proof, follows an approved instruction discussed in Doherty v. St. Louis Butter Co., 339

Mo. 996, 1003(2), 98 S. W. (2d) 742, 744(2), with the exception that between the first and second sentences of the instruction in the Doherty case, the instant instruction inserted the sentence: "Negligence is a positive wrong, and, therefore, in this case is not presumed." The quoted sentence is subject to the criticism set forth in Blunk v. Snider, 342 Mo. 26, 111 S. W. (2d) 163, 165(8).

■ c. (1). Plaintiff says defendant's Instruction No. 6, submitting the defense of assumed risk, should not have been given. A reading of the cases mentioned in our discussion of a case made by plaintiff (as well as other cases) in the light of that portion of the conflicting testimony favorable to defendant discloses that defendant was entitled to a proper instruction submitting the issue.

(2). However, plaintiff's complaint that the instruction was broader than defendant's answer appears to be well taken. The defense of assumption of risk in an action under the Federal Employers' Liability Act should be pleaded to be available. (Vaughan v. St. Louis M. Br. Term. Ry. Co., 322 Mo. 980, 989, 18 S. W. (2d) 62, 65(4), citing authority; consult 39 C. J., p. 952, sec. 1181, including n. 8[b].) Defendant's answer, as we read it, attempts to plead only those risks "arising from and incident" to plaintiff's contract of employment. We find therein no allegation charging plaintiff with the assumption of any extraordinary risk caused by defendant's negligence. Notwithstanding this, the instruction predicated a verdict for defendant upon a finding that plaintiff's "injury was the result of one of the ordinary risks incident to his employment, or was the result of an extraordinary risk caused by his employer's negligence, or the negligence of his fellow servants, which risks were obvious and appreciated by plaintiff." Clift v. St. Louis-S. F. Ry. Co., 320 Mo. 791, 800, 9 S. W. (2d) 972, 976(8), states: "The assumption of risk that is tantamount to contributory negligence must be pleaded affirmatively and with such particularity as contributory negligence is pleaded." [Thomas v. Southern Pac. Co., 116 Cal. App. 126, 133(7), 2 Pac. (2d) 544, 547(7).] Louisville N. Railroad Co. v. Parker, 223 Ala. 626, 138 So. 231, contains interesting observations bearing on the issue. Instructions should be within the purview both of the pleadings and the evidence, as litigants are not necessarily required to meet an issue not pleaded. [State ex rel. v. Ellison (Banc, 1917), 270 Mo. 645, 653, 195 S. W. 722, 723(3), and cases cited.]

■ d. (1). Plaintiff's chief complaint against Instruction No. 7 states that the matters specified in said instruction were pleaded by defendant in bar and that said instruction submitting said matters in mitigation of damages was erroneous. O'Donnell v. Baltimore & O. Railroad Co., 324 Mo. 1097, 1110(III), 26 S. W. (2d) 929, 935(15, 16, 18), "after some hesitation" in a case where there was

"nothing to show the parties treated the defense of contributory negligence as being in the case" ruled to that effect; and State ex rel. Ambrose v. Trimble (Banc, 1924), 304 Mo. 533, 537, 538, 263 S. W. 840, 841(3), and Sells v. Atchison, T. & S. F. Ry. Co., 266 Mo. 155, 186, 181 S. W. 106, 114, contain *dictum* to like effect. The issue affords interesting study.* However, we deem it unnecessary to rule the point, notwithstanding the necessity of a retrial; because plaintiff does not question other portions of defendant's answer pleading contributory negligence, and defendant proceeded on the theory the allegations involved submitted an issue of contributory negligence in mitigation of damages, and any question with reference thereto may be eliminated readily by amending the answer; for instance, by defendant striking the words "and without any negligence on the part of this defendant" from the paragraph reading (said phrase apparently causing said plea to be ambiguous and inconsistent): "And this defendant says that if plaintiff suffered any injuries, as aforesaid, it was directly occasioned by his said carelessness and negligence contributing directly thereto, and without any negligence on the part of this defendant, as herein set forth." [Doody v. California Woolen Mills Co. (Mo.), 26 S. W. 513, 534(6); and consult Sissel v. St. Louis-S. F. Railroad Co., 214 Mo. 515, 521, 526(I), 113 S. W. 1104, 1105, 1106(1); and Peterson v. Metropolitan St. Ry. Co., 211 Mo. 498, 513, 520, 111 S. W. 37, 41, 43(5).]

Instruction No. 7, in part, reads: ". . . and if you further find and believe from the evidence that notwithstanding the duty of the plaintiff to use ordinary care for his own safety, plaintiff was not so conducting himself at the time he was injured, if you so find, but negligently and carelessly placed himself near one of defendant's tracks, if you so find, and failed to watch for engines and cars thereon, if you so find, and that such conduct on his part contributed to cause plaintiff being struck and injured, if you so find, then you should take such contributory negligence, if any, into consideration in arriving at your verdict, as otherwise defined in these instructions."

(2) Plaintiff, without otherwise questioning the instruction in this respect, contends the phrase "and failed to watch for engines and cars thereon" assumed plaintiff's negligence if the jury found

---

*Contributory negligence is interposed as an affirmative defense in bar to a recovery based on primary negligence under the Missouri law; whereas under the Federal Employers' Liability Act (Sec. 3) it is pleaded (39 C. J. 954, sec. 1182) in mitigation of damages (The Sells case, supra). Beck v. Dowell, 40 Mo. App. 71, 74(I) (affirmed on all points ruled in 111 Mo. 506, 513, 20 S. W. 209, 210) stated: "In actions for personal injuries, evidence in mitigation of damages may be given under a general denial. . . . This was the rule at common law . . . and it has not peen changed by our code of civil procedure." Consult Sec. 776, R. S. 1929, Mo. Stat. Ann., p. 1015.

plaintiff so "failed to watch." We think the grammatical construction of the instruction differs materially from the instructions considered in Mahaney v. Kansas City, C. C. & St. J. A. T. Co., 329 Mo. 793, 803, 46 S. W. (2d) 817, 821(7), and Clark v. Atchison & E. B. Co., 324 Mo. 544, 564, 24 S. W. (2d) 143, 153(18), cited by plaintiff; and that the phraseology of the instruction, considering the quoted portion as a whole without isolating the questioned clause from its context and giving consideration to the connectives employed, carries over to the questioned clause the characterizing phrase ("negligently and carelessly") as well as the subject ("plaintiff") of the sentence; and that a jury composed of practical men would so read said instruction.

(3) Plaintiff says that portion of the instruction reading "and that such conduct on his part contributed to cause plaintiff being struck and injured, if you so find," authorized the jury to diminish plaintiff's damages if the hypothesized facts contributed remotely or in any degree, not directly or proximately, to plaintiff's injuries. The attack is against the omission of the word "directly" or "proximately" before the word "contributed." While the writer is of the opinion a more common and, possibly, more accurate wording of the instruction might well include the term "directly" or "proximately" in connection with the word "contributed;" the use of the word "cause" in the instant instruction predicated a diminishing of plaintiff's damages upon specific acts of negligence on the part of plaintiff hypothesized therein, which acts, if causative, must have directly and proximately contributed to plaintiff's injuries. The instruction falls within the ruling in White v. United Rys. Co., 250 Mo. 476, 489(III), 157 S. W. 593, 597(3). [See, also, Anderson v. Union Terminal Ry. Co., 161 Mo. 411, 428, 61 S. W. 874, 879; State ex rel. v. Haid, 324 Mo. 759, 763, 25 S. W. (2d) 92(2, 4).] Meyer v. Pacific Railroad, 40 Mo. 151, 155, carried no discussion of the effect of the word "cause" in the phrase; and may be differentiated on the instant issue from this and the cases mentioned in that the instruction there refused predicated a verdict for defendant upon Meyer's inability to exercise ordinary care and prudence by reason of his intoxication without specifying any act of Meyer occasioned by such intoxication directly or proximately contributing to his death. The ratio decidendi of the Meyer case is that a man is not beyond the pale of legal protection merely because he is drunk.

(4 and 5). We think there is some merit to plaintiff's statement that the instruction conflicted (plaintiff does not point out the conflict) with plaintiff's instruction on the measure of damages (citing Howser v. Great Western Railroad Co., 319 Mo. 1015, 5 S. W. (2d) 59—see 1026(II), 64(4), respectively); and that the instruction is confusing in that the last clause referred to "contributory negligence"

as defined in other instructions when no other instruction defined the term (citing Chapman v. Missouri Pacific Railroad Co., 217 Mo. App. 312, 269 S. W. 688). However, it is apparent from the verdict for plaintiff that such consideration as the jury gave the instruction was limited to a consideration of plaintiff's contributory negligence in arriving at the "amount" of plaintiff's damages (the interpretation placed upon the instruction by plaintiff in points hereinbefore discussed) and not as authorizing a verdict for defendant upon finding plaintiff guilty of contributory negligence. The instruction should be redrafted.

IV. Plaintiff complains of the refusal of his Instruction D, stating it embraced every element of the humanitarian doctrine in proper form. He stresses Clark v. Terminal Railroad Assn. (Mo.), 111 S. W. (2d) 168, 170; and cites, among others, Mayfield v. Kansas City So. Ry. Co., 337 Mo. 79, 90, 93, 94, 85 S. W. (2d) 116, 123(7-10), 124 (20), 125(23). Instruction D conditioned a verdict for plaintiff upon the failure of defendant, under the humanitarian rule, (1) to stop or (2) to cause said cut of cars "to remain stopped." Plaintiff's petition hypothecated negligence under the humanitarian doctrine on defendant's alleged failure (1) to stop or (2) to warn, but contained no charge of any negligence in defendant's failure to keep said cut of cars "stopped." Further, plaintiff argues: "The evidence conclusively shows that after the cars were put in motion there was ample time and opportunity for them to have stopped before striking plaintiff." Obviously plaintiff was not in a position of imminent peril of being struck and injured by said cut of cars so long as they remained stationary. The refusal of the instruction was not error.

We have not discussed each individual issue presented; but what we have said sufficiently disposes of the issues presented insofar as they are likely to recur upon or are essential to a retrial.

Plaintiff asks that the judgment be reversed and the cause remanded for a new trial. It is so ordered. *Cooley* and *Westhues*, *CC.*, concur.

PER CURIAM:—The foregoing opinion of BOHLING, C., is adopted as the opinion of the court. All the judges concur.

### ON MOTION FOR REHEARING.

PER CURIAM:— Respondent says we did not rule the amount of damages adequate or inadequate. Right. That if not inadequate, appellant, having received the judgment for damages, may not complain; and concludes reversible error may not be predicated on the instructions. Wrong; because: Contributory negligence in the in-

626

stant case operates to diminish, not bar, recovery. [See Federal Employers' Liability Act.] While under proper instructions a given verdict might or might not be considered inadequate or excessive as a matter of law according to the facts, such a verdict is as much not in accordance with the law of the case if arrived at under instructions effecting the withdrawal of proper elements of damage from consideration as under instructions injecting improper elements for allowance. The issue then is not merely the adequacy or inadequacy of the damages (as in cases wherein contributory negligence operates as a bar to recovery and plaintiff has prevailed or the damages have been arrived at under instructions properly submitting the issue of the ''amount'' of the damages) but whether proper damages, within that wide range of discretion between inadequate and excessive damages as a matter of law entrusted to the triers of the fact, have been arrived at under correct directions respecting the ''amount'' of the verdict.

The motion for rehearing is overruled.