Walter D. THOMPSON, (Plaintiff) Appellant,
v.
H. W. KROEGER, d/b/a H. W. Kroeger Erection Company, and H. B. Deal Construction Company, (Defendants) Respondents.

No. 50096.

Supreme Court of Missouri,

Division No. 1.

June 8, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied July 13, 1964.

**340**

Benjamin Ray Carleno, Carleno & Nick, and John L. Doskocil, Ferguson, for plaintiff-appellant.

Evans & Dixon, William Wallace Evans, St. Louis, for respondent, H. B. Deal Const. Co.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent, H. W. Kroeger, d/b/a H. W. Kroeger Erection Co.    .        .

HOLMAN, Judge.

Defendant, H. B. Deal Construction Company, was the general contractor engaged in the building of the Ballwin Plaza Shopping Center in St. Louis County. Defendant H. W. Kroeger (hereinafter generally referred to as defendant) had the subcontract to erect the steel on the project. The bricklaying work was done by another subcontractor, Steve Gorman Bricklaying Company. Plaintiff was employed by Gorman as a hodcarrier. On the morning of July 18, 1960, the bricklaying crew was working on an improvised scaffold which consisted of boards laid across steel ceiling joists that had been installed but not braced. Plaintiff sustained injuries in a fall which occurred when the joists deflected and gave way causing the boards and building materials thereon (as well as plaintiff) to fall to the ground. In this action the trial court sustained a motion for summary judgment in favor of defendant Deal. Upon a trial the jury returned a verdict in favor of the remaining defendant, H. W. Kroeger. Plaintiff has duly appealed from said judgments.

Plaintiff called as a witness Donald Peterson, one of defendant's foremen. This witness testified that the accident occurred on a Monday morning at the southwest corner of the east wing of the building; that the ceiling joists in the building weigh approximately 500 pounds each; that most of the joists in that area had been set some time before that day but that the six joists next to the wall could not be set until certain construction had been completed; that on the morning in question he had a five-man crew operating a crane; that at 8 o'clock they set the six joists in question and then moved the crane to another part of the job and set a beam; that shortly thereafter he and another man went back to bridge the six joists (joists are bridged by attaching steel rods between them in the form of an "X"); that when he arrived at that place he found that the bricklaying crew had placed boards on the unbridged joists preparatory to working thereon; that

he told a laborer there to remove the boards but the man ignored his request; that he then went to the expediter for the general contractor and told him they couldn't finish the work on the joists until the boards were removed and the expediter stated that "he would take care of it"; that the accident in which plaintiff was injured occurred shortly thereafter.

On cross-examination Mr. Peterson testified as follows: "Q. Had you ever talked with this bricklaying crew on this job about using your bar joists as scaffolding? A. Previously we had told them not to do it. Q. How long before, Don? A. It seemed like every time we turned around they were doing it. And every time we would see it we would tell them * * *. Q. when you say tell them, did that include the bricklayers, the foremen, the laborers and everybody working with them? A. Well, usually the man that was doing it at the time would be told and the bricklaying foreman had been told. I told him and I know Fred had told him before." The witness did not remember whether or not he told plaintiff personally not to put boards on the joists, although he remembered having seen plaintiff on the job.

Defendant Kroeger was also called as a witness by plaintiff. Mr. Kroeger testified that he was at the site of this project on Thursday before plaintiff was injured and the six joists in question were not in place at that time. He conceded that the specifications stated that "as soon as joists have been erected bridging shall be installed between them before the application of construction loads." He stated, however, that it was the general custom to set joists as much as a week or two before they are bridged; that joists are not only required to be bridged but are welded at one end to the steel beam; that he agreed with the statement of the "Institute on Steel Joists" that bridging should be completed before construction loads are placed on the joists; that it is not safe to place loads on joists that have not been bridged and welded into place.

On cross-examination defendant stated that he never gave anyone permission to put a construction load on unbridged joists; that it was the custom on a job of this kind that steel erectors could not direct the bricklayers to stay off the joists; that it is the contractor who should tell the men where to work; that he had no control over the laborers employed by other subcontractors, although he could warn them not to work on unbridged joists and his men did that on this occasion.

Plaintiff testified that the six joists here involved were in place and they were working on them the Friday before he was hurt on Monday; that he had not noticed whether the joists were braced but stated that if he had looked he could have seen whether or not they were braced; that it was the custom to use joists as scaffolding in doing some of the bricklaying; that he never received any warning to get off of these particular joists; that if he had noticed that the joists were not braced he wouldn't have worked on them; that on the morning of July 18 he started to work at 7:30; that the hodcarriers start at that time so they can have the materials on the scaffold ready for the bricklayers who start at 8; that about 9:30 "there was a 'boom', and the thing collapsed with us and the bricks and mortar and mortar boards and drinking water barrel piled up on us." On cross-examination plaintiff stated that it was one of his jobs to build scaffolding and to see that it is safe. He also conceded that two days after the accident an investigator came to his home and that he told the investigator that he, plaintiff, had told his foreman that morning that the place they were working wasn't safe and that the foreman talked to the general superintendent and told plaintiff that it was safe and plaintiff went ahead and worked thereon. Plaintiff attempted to explain those statements by saying he had been talking about the canopy they had been working on the week before.

Leland Spotswood, an architect and registered engineer, was called as an expert witness by plaintiff. He expressed the view that joists should always be bridged and welded before any construction load is placed thereon; that unbridged joists will hold considerable weight near the beam but are easily deflected near the center. He also agreed with the statement of the "Steel Joists Institute" that "as soon as joists are erected they should be bridged and fastened into place before application of loads." He expressed the opinion that the average person in the construction field would not have known that unbridged joists were not strong. Upon cross-examination he stated that normally a steel subcontractor would have no right to issue orders to the bricklaying crew and that the general contractor should keep all workmen off of unbridged joists. He stated that if he saw some one on unbridged joists he would tell them to get off and if they did not do so he would report it to the general superintendent. This witness also stated that it was not unusual in the construction field to set joists and then use the equipment to set beams somewhere else before coming back and bridging the joists.

Elmer Wilson, one of the workmen in plaintiff's crew, testified that the joists in question had been set the week before and they had worked on the boards placed thereon during that week; that it was customary to use steel joists for scaffolding and that no one had given him any warning that these joists were not safe to work on.

Defendant presented the testimony of Walter Lichius, general superintendent, and John Mincher, project engineer for Deal. Mr. Lichius stated that he would not approve of anyone going on joists until they had been braced. He denied that he had any conversation with the foreman of the bricklayers on the morning plaintiff was injured. On cross-examination he stated that it was generally known in the business that bricklayers use the steel joists to lay boards on in doing their work.

Mr. Mincher testified that before the six joists here involved were erected he had cautioned the foreman of the bricklayers not to put any loads on them until they were bridged. He stated that after the joists were erected the steel erection foreman made a report to him to the effect that he could not install the bridging because the bricklayers had placed planking on the joists and that he had told him that he would make arrangements to have it removed; that the accident occurred before he got over there to make the arrangements.

Plaintiff attempted to state a claim for relief against each defendant by alleging that the provisions of Section 292.090 [1] were applicable in the situation heretofore described. It reads as follows: "All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon. All persons engaged in the erection, repairing or taking down of any kind of building shall exercise due caution and care so as to prevent injury or accident to those at work or near by." The last sentence of said section appears to be a statement of the existing common law duty. As will hereinafter appear, we agree with the ruling of the trial court that the other provisions of the section are not here applicable in view of the factual situation heretofore outlined.

■ The first point briefed is that the trial court erred in entering a summary judgment in favor of defendant Deal. The theory upon which that judgment was entered was that plaintiff and his employer were subject to the provisions of the Mis-

1. All statutory references are to RSMo 1959, V.A.M.S.

souri Workmen's Compensation Law, § 287.010 et seq.; that defendant Deal was plaintiff's statutory employer by reason of § 287.040, and that plaintiff was therefore precluded from maintaining a common law action against Deal under the provisions of § 287.120. We think it is clear that the trial court ruled correctly. That question was squarely decided in the case of Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153, wherein we held that by reason of the aforementioned statutes the subcontractor's injured employee could not maintain a common law action for damages against the general contractor. Plaintiff says that Bunner is not sound and suggests that it should be overruled. We have re-examined the Bunner case and have concluded that it is sound and that it should continue to be followed in this state.

Plaintiff also contends that this case presents an exception to the rule in the Bunner case because of the alleged violation of the so-called Scaffold Act, § 292.090. We do not agree. Even if we should assume that said act were applicable, it would not change our ruling. This would still be an action for damages for plaintiff's personal injuries, which, as heretofore stated, is barred by reason of § 287.120. We accordingly rule that the judgment in favor of defendant Deal should be affirmed.

■ Next, plaintiff contends that the court erred in giving Instruction No. 4 at the request of defendant. It reads as follows: "The court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence defendant's employees set or placed approximately six bar joists by use of a crane, and before bridging or supporting said joists went to another location on the building site to use the same crane in placing one or more beams; and if you further find that after placing said beam or beams defendant's employees returned within a reasonable time for the purpose of bridging said bar joists; and if you further find that in making such use of the crane and in leaving said bar joists to be bridged after the use of the crane was completed defendant's employees followed a custom, usage and practice in the construction industry, and that in so doing they were not negligent; and if you further find that plaintiff knew that it was not safe to put boards across said joists and work thereon before the joists were bridged or supported, then your verdict should be against plaintiff and in favor of the defendant."

It is necessary to consider that instruction in connection with plaintiff's verdict-directing Instruction No. 3. That instruction hypothesized that defendant installed the joists and failed to bridge them "in accordance with the plans, specifications and custom of the business"; that plaintiff, in accordance with the practice of his trade, placed boards and building materials thereon and that defendant knew or reasonably could have foreseen the presence of plaintiff and said materials on said boards; "that plaintiff, at the times of so placing said boards and of placing said materials on said boards, had no knowledge that said joists would not support such materials, together with plaintiff thereon or that it was unsafe and was not warned of any danger of said joists collapsing by defendant, his agents, servants, or employees; * * *."

■ Instruction No. 4 is unusual in that it hypothesizes conjunctively two somewhat unrelated factual situations. We have concluded that it is prejudicially erroneous because neither hypothesis is sufficient to warrant a verdict for defendant. In regard to the portion relating to a custom in the industry, we think the applicable rule is that "usual practices, usage or customs may, in a given case, be shown as evidence of due care, although they are not the standards of due care, neither do they conclusively demonstrate due care. Specifically, it may be said that the exercise of due care requires precautions which a reasonably prudent employer would have taken in given circumstances, even though other employers may not have taken such commensurate

precautions. What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not. Grosvener v. New York Cent. R. Co., 343 Mo. 611, 123 S.W. 2d 173; Cleghorn v. Terminal R. Ass'n of St. Louis, Mo.Sup., 289 S.W.2d 13; Texas & Pac. Ry. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905. But, as stated, usual practices, usage or customs may, in given cases, be shown as evidence of due care." Gatzke v. Terminal Railroad Ass'n of St. Louis, Mo.Sup., 321 S.W.2d 462, 466.

We need not rule whether or not the submission conforms with that rule. The real vice of that part of the instruction is that it does not hypothesize facts constituting a defense to plaintiff's submission. It was conceded by defendant that it was dangerous for anyone to work on unbridged joists. The essential theory of plaintiff's submission was that defendant knew, or in the exercise of ordinary care should have known, that plaintiff was working on unbridged joists and failed to warn him of the danger. That submission was supported by the evidence. In the light of plaintiff's theory of the case it is immaterial that defendant followed a custom of the industry in delaying the bridging of the joists for a time after they were set. The reason for the delay is of no consequence if, as the jury could have found, defendant knew plaintiff was working on those admittedly dangerous joists and failed to warn him of the danger.

If the remaining portion of the instruction had required a finding that plaintiff knew that it was not safe to work on those joists such would have been sufficient to justify a verdict for defendant because, in that situation, there would have been no necessity of warning him. However, we do not think it required that finding. The finding required was "that plaintiff knew that it was not safe to put boards across said joists and work thereon before the joists were bridged." That part of the instruction actually submitted a fact which

plaintiff had admitted. Note the following from his testimony: "A. Well, I didn't notice it wasn't braced. Q. Well, would it have made any difference if you had noticed it? A. Oh, yes, sir. Q. In what way would that have made a difference? A. Oh, I wouldn't—I mean if I'd have noticed it I wouldn't have gone up there." It is clear that plaintiff knew it was not safe to work on unbridged joists but he denied knowing that the joists in question had not been bridged. If the submission under consideration had simply required a finding that plaintiff knew that it was not safe to work on those joists it would have been sufficient. But, as it was actually phrased, it merely required a finding that plaintiff knew it was not safe to work on unbridged joists.

■ We have noticed that plaintiff's Instruction No. 3 is erroneous in failing to require a finding of negligence on the part of defendant. We suggest that before another trial plaintiff's counsel should reexamine said instruction for possible errors and make such corrections as may appear advisable.

■ Plaintiff contends that the court erred in refusing certain instructions offered by him which were based upon § 292.090, the so-called Scaffolding Act. Since questions relating to that act will likely recur upon another trial we will discuss it briefly. It is our view that § 292.-090 has no application in this case. This for the reason that defendant was not engaged in constructing a scaffold to be used in the erection of the building. Defendant, in erecting the steel joists, was constructing an integral part of the building, i. e., a portion of the roof thereof. The fact that the bricklaying crew may have seen fit to use the joists to support boards upon which to work could not reasonably warrant the conclusion that defendant had constructed a scaffold within the meaning of § 292.090.

Other points briefed by plaintiff relate to alleged trial errors which will not likely

recur upon another trial and hence we will not extend this opinion by a discussion thereof.

The judgment in favor of defendant Deal is affirmed. The judgment in favor of defendant Kroeger is reversed and the cause is remanded for a new trial as to plaintiff's claim against him.

All concur except HENLEY, J., not sitting.